JULIE HICKEY MARCO, administratrix,[1] vs. WARREN S.
GREEN, administrator,[2] & another.[3]

Middlesex. March 3, 1993. - July 8, 1993.

Present: LIACOS. C J.. NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Executor and Administrator*, Action for death, Status in proceedings in-
volving estate, Voluntary administrator.  *Wrongful Death. Release.
Statute*, Construction.

A voluntary administratrix acting under G. L. c. 195, § 16, had no au-
thority to maintain or settle a claim for the wrongful death of her dece-
dent. [735-739]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 27, 1991.

The case was heard by *George A. O'Toole, Jr*, J., on mo-
tions for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Laurence S. Boisvert* for the plaintiff.

*Richard M. Haley* for the defendants.

LIACOS, C.J. The issue before us is whether a voluntary
administratrix acting pursuant to G. L. c. 195, § 16 (1990
ed.), has the legal authority to maintain or compromise a
wrongful death action under G. L. c. 229, § 2 (1990 ed.).
We summarize the relevant facts established by statements,
affidavits, and other materials in the record.

On August 26, 1988, Kenneth S. Hickey (decedent) died
in the course of a surgical operation performed by Dr. Rich-
ard E. Wilson at Brigham and Women's Hospital. On March

---

[1] Of the estate of Kenneth S. Hickey.

[2] Of the estate of Richard E. Wilson.

[3] Brigham and Women's Hospital.

6, 1991, a judge in the Probate and Family Court for Middlesex County appointed the decedent's surviving spouse, Julie Hickey Marco (Marco), administratrix with the will annexed of the decedent's estate. On August 27, 1991, Marco filed a wrongful death claim in the Superior Court against the estate of Dr. Wilson, who had died in March, 1989, and against Brigham and Women's Hospital. In her complaint, Marco alleged that Dr. Wilson negligently caused the decedent's death by allowing a long clamp to crush the tissue to which it was attached. Marco further alleged that the clamp fell off, thereby causing massive arterial bleeding which resulted in the decedent's death.

On November 15, 1991, the defendants moved to dismiss Marco's complaint pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). The defendants presented the following uncontroverted facts in support of their motion: On September 27, 1988, Kathleen Hickey (Hickey), the decedent's daughter from a prior marriage, undertook to act as voluntary administratrix of the decedent's estate. On July 28, 1989, Hickey filed, in the Probate and Family Court for Norfolk County, a notice of claim against Dr. Wilson's estate for damages arising from the decedent's death.[4] With the assistance of her attorney, Hickey subsequently negotiated a $375,000 settlement with Dr. Wilson's malpractice insurer, in consideration of which Hickey signed a general release purporting to discharge the defendants of all liability arising from the decedent's death.[5] This release,[6] the defendants ar-

---

[4]The notice of claim denotes Hickey as "administrator."

[5]According to the uncontroverted affidavit of a representative of Dr. Wilson's malpractice insurer, Mr. Flannigan, Hickey's attorney, represented that Hickey "was the Administratrix of the Estate of the decedent [and] had full legal authority to compromise the claim against Richard Wilson, M.D. and the Brigham and Women's Hospital." The affidavit also stated that "[i]t was further represented . . . by Attorney Flannigan that his client, Kathleen Hickey, was capable of settling this claim prior to the institution of a lawsuit by executing a Release of All Claims binding upon the decedent's estate and family."

[6]It appears that no notice was given to Marco of either the claim or of the release in settlement. Nor does it appear in the record that any monies received by Hickey were distributed to the beneficiaries. G. L. c. 229, § 1.

gued, was binding on Marco and barred her wrongful death action.

The motion judge treated the defendants' motions to dismiss as motions for summary judgment pursuant to Mass. R. Civ. P. 56, 365 Mass. 824 (1974). The judge held that, under G. L. c. 229, § 2, a wrongful death claim may be brought by the "executor or administrator of the deceased." The judge noted that the statutes of the Commonwealth establish various categories of executors and administrators.[7] The use of a general term in G. L. c. 229, § 2, the judge reasoned, indicates that no distinction should be made between such categories and that a voluntary administratrix may maintain or compromise a wrongful death claim. Moreover, the judge held, G. L. c. 195, § 16, provides independent statutory support for such conclusion because § 16 authorizes a voluntary administratrix to "receive payments and discharge debts" and to "negotiate or assign any chose in action."

The judge found that Hickey fully complied with the requirements of § 16,[8] and in light of his rulings of law, he

---

[7]The term "administrator" is used without a qualifier in G. L. c. 193, § 1 (1990 ed.), which designates the person entitled to administer the estate of a person who dies intestate. This term is used with a qualifier in other statutes such as G. L. c. 193, § 7 (1990 ed.) (providing for the appointment of an administrator "with the will annexed" if no executor is named in the will, or if all the executors therein named are dead, incompetent, or deemed neglectful); G. L. c. 193, § 9 (1990 ed.) (providing, with certain enumerated conditions, for the appointment of an "administrator de bonis non" if "a sole or surviving executor or administrator dies, resigns or is removed before having fully administered an estate"); G. L. c. 193, §§ 10, 11 (providing for appointment of "special administrator" to collect and preserve personal properly of deceased); G. L. c. 194, § 4 (providing for the appointment of a public administrator); G. L. c. 195, § 16 (establishing procedures for voluntary administration of small estates).

While these provisions are relevant to our analysis, we do not undertake a comprehensive review of all statutes referring to "executors" and "administrators" and the relationship between such statutes and G. L. c. 229, § 2.

[8]The parties do not dispute this aspect of the judge's ruling. Rather, they focus their argument on whether a voluntary administratrix who fulfils the requirements of § 16 is empowered to maintain or compromise a wrongful death claim. We note, however, that Marco presented uncontroverted evidence that she received no share of the settlement proceeds. Hickey's retention of the settlement proceeds may have violated § 16,

concluded that Hickey released the defendants of all liability arising from the decedent's death. Accordingly, the judge allowed the defendants' motions and entered summary judgment in their favor. Marco now appeals, arguing that the judge's legal conclusions were erroneous.

General Laws c. 229, § 2, governs actions for recovery of damages arising from wrongful death. In *Gaudette* v. *Webb*, 362 Mass. 60 (1972), this court explained that § 2 establishes procedures for the recovery of damages the substantive right to which is anchored in the common law. *Id.* at 71. See *Cook* v. *Hanover Ins. Indem. Co.*, 32 Mass. App. Ct. 555, 559 (1992). One such procedure is the requirement that the "executor or administrator of the deceased," rather than any beneficiary of the estate as such, act as the plaintiff in a wrongful death action brought on behalf of the designated categories of beneficiaries. G. L. c. 229, § 2. See *Gaudette*, *supra*.[9]

These words unquestionably encompass administrators appointed pursuant to G. L. c. 193, § 1 (1990 ed.), and executors appointed pursuant to G. L. c. 192, § 4 (1990 ed.). See *Koutoudakis* v. *Great Am. Co.*, 285 Mass. 466, 467 (1934), and cases cited.[10] A public administrator also may maintain or compromise a wrongful death claim on behalf of the estate which he or she represents. *O'Rourke* v. *Sullivan*, 309 Mass. 424, 427 (1941). Such authority flows from the statutory provision stating that a public administrator "shall, ex-

---

sixth par., which provides that, after certain enumerated expenses are paid, the voluntary administrator must distribute the balance of the "assets which come into his hands" to the decedent's surviving spouse.

[9]The parties to the present dispute agree that the ability to compromise a wrongful death action flows from the power to maintain it, and that the resolution of the dispute thus revolves on whether a voluntary administratrix acting pursuant to G. L. c. 195, § 16, comes within the relevant language in G. L. c. 229, § 2.

[10]The power of such an executor devolves by necessary implication on an administrator with the will annexed or on an administrator de bonis non because of the similar nature of the office which they hold. See *Mayberry* v. *Carey*, 268 Mass. 255, 258 (1929); *Blake* v. *Dexter*, 12 Cush. 559, 569 (1853).

cept as otherwise provided in this chapter, administer estates and render accounts in the same manner as other administrators." *Id.*, quoting G. L. (Ter. Ed.) c. 194, § 4.[11]

The Legislature, however, has established limitations on the power of other administrators or executors to bring legal actions. The Legislature, for instance, has authorized a "special administrator" to bring only such actions as are necessary "to collect all the personal property of the deceased and preserve the same for the executor or administrator when appointed." G. L. c. 193, § 11 (1990 ed.). See G. L. c. 192, § 14 (1990 ed.) (similarly limiting ability of temporary executor to bring legal action). Also, the Legislature clearly intended to deprive an "executor in his own wrong," defined as one who "injuriously intermeddles with any personal property of a deceased person, without being thereto authorized by law," of the power to bring any legal action whatsoever. G. L. c. 195, § 14.'

We strive to construe related statutes harmoniously so as to give rise to a consistent body of law. See *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 247 (1993). In light of the express statutory limitations on the authority of certain administrators and executors to maintain or compromise a cause of action, we hold that the motion judge erred when he concluded that G. L. c. 229, § 2, does not distinguish between the various categories of executors and administrators. We conclude that such executors or administrators do not come within the ambit of § 2 where another statute deprives them of the power to sue. Accordingly, we turn to the issue whether G. L. c. 195, § 16, so limits the powers of a voluntary administratrix.

Section 16 delineates the circumstances in which a designated person voluntarily may undertake, without appointment by a court, to administer an estate consisting entirely of personal property not exceeding $15,000 in value.[12] Section

---

[11]This language is still found at G. L. c. 194, § 4 (1990 ed.).

[12]In addition, the estate may include "a motor vehicle of which the decedent was the owner." G. L. c. 195, § 16.

16, first par., requires that such person file a statement containing prescribed information as a prerequisite to holding the office of voluntary administrator.[13] Section 16, third par., empowers the voluntary administrator to "receive payment of any debt or obligation in the nature of a debt, or delivery of any chattel or asset, scheduled in such statement."[14] Section 16, fourth par., authorizes the voluntary administrator to "negotiate or assign any chose in action to convert the same to cash in a reasonable amount."

Hickey argues that the motion judge properly concluded that these two clauses authorized her to bring a wrongful death action under G. L. c. 229, § 2. We disagree.

By its plain terms, § 16 provides that a voluntary administrator may receive payment of only those debts or obligations *scheduled in the statutorily required statement.* This language accords with the informal nature of the office held pursuant to § 16: The status of voluntary administrator may be achieved on fulfilment of essentially administrative for-

---

[13]Such statement may be filed only if no petition for letters testamentary or letters of administration has been filed in the thirty days following the death of the decedent. The statement must be verified by oath or affirmation, and must contain the following information: "(*a*) the name and residential address of the affiant, (*b*) the name, residence and date of death of the deceased, (*c*) the relationship of the affiant to the deceased, (*d*) a schedule showing every asset of the estate known to the affiant and the estimated value of each such asset, (*e*) a statement that the affiant has undertaken to act as voluntary administrator of the estate of the deceased and will administer the same according to law, and apply the proceeds thereof in conformity with this section, (*f*) the names and addresses of surviving joint owners of property with the deceased, known to the affiant, and (*g*) the names and addresses known to the affiant of the persons who would take under the provisions of section three of chapter one hundred and ninety in the case of intestacy." G. L. c. 195, § 16 (1990 ed.).

The statement filed by Hickey showed the only assets to be a "1978 Cadillac DeVille" (no value shown) and a bank account ($827.59 value shown). No contention is made that the present wrongful death claim is "an asset of the estate" that should have been listed in this statement. See *infra* at 737.

[14]The voluntary administrator must present a duly attested copy of the statement required by § 16, first par., "tender . . . a proper receipt in writing," and "surrender . . . any policy, passbook, note, certificate or other evidentiary instrument."

malities and without formal court approval. Cf. G. L. c. 192, § 1 (1990 ed.) (requiring filing of petition for appointment of administrator or executor of estate prior to issuance of letters testamentary or letters of administration). A voluntary administrator is not required to give bond with sufficient sureties to guarantee the proper performance of his or her trust. Cf. G. L. c. 205, § 1 (1990 ed.) (providing that, among other fiduciaries, an "executor, temporary executor or temporary administrator with the will annexed, administrator, [or] administrator with the will annexed" shall give such bond unless exempted pursuant to another section).

In recognition of the relative lack of accountability of a voluntary administrator, the Legislature explicitly has confined the applicability of § 16 to estates of limited value. The requirement that the voluntary administrator file a statement and administer only those assets and debts so itemized evinces a legislative intent to establish a mechanism whereby the use of § 16 is confined to its intended scope.[15] We would negate both the letter and the spirit of § 16 if we concluded that a voluntary administratrix may compromise a wrongful death claim which is apparently worth at least $375,000 and which was not listed in the requisite statement.[16]

---

[15]We do not intend to restrict the ability of a voluntary administratrix to receive payment of a debt inadvertently omitted from the statement filed, so long as the statement is properly amended, and the receipt of such debt does not bring the estate outside of the scope of § 16, as happened here.

[16]Moreover, § 16 explicitly states that the voluntary administrator is the "legal representative of the deceased" for purposes of the third paragraph of the section and for purposes of G. L. c. 175, § 113A (6) (1990 ed.) (motor vehicle insurance coverage of legal representative of estate), and G. L. c. 90, § 2, fourth par. (1990 ed.) (registration of motor vehicles and trailers; transfer of ownership; plates). Had the Legislature intended the voluntary administrator to act as legal representative for other purposes, it would have provided so expressly.

We disagree with the defendants' argument that such express grant of authority flows from the statutory language providing that the statement required by § 16 must contain a declaration that the voluntary administrator will administer the estate "according to law, and apply the proceeds thereof in conformity with this section . . . ." G. L. c. 195, § 16. This directive merely reflects the legislative intent that the voluntary adminis-

We conclude also that the authority of a voluntary administratrix to "negotiate or assign [a] chose in action" does not encompass the power to maintain or compromise a wrongful death claim. As the motion judge recognized, a wrongful death claim is not a chose in action. See *Koutoudakis, supra* at 468.[17] "The money recovered upon a wrongful death claim is not a general asset of the probate estate, but constitutes a statutory trust fund, held by the administratrix as trustee for distribution to the statutory beneficiaries." *Sullivan* v. *Goulette*, 344 Mass. 307, 311 (1962). Where the statute is not ambiguous or couched in terms suggesting that we must look beyond its express language, we construe the statute in accordance with its plain meaning. See *Pobieglo* v. *Monsanto Co.*, 402 Mass. 112, 116 (1988). There is no indication that the Legislature intended a voluntary administratrix to compromise a wrongful death claim such as the present one. Accordingly, we decline to infer the power to compromise such a claim from the inapposite language addressing the negotiation or assignment of a chose in action.[18]

In sum, we hold that a voluntary administratrix acting pursuant to § 16 possesses no authority to bring a wrongful death claim, or to settle one.[19]

---

trator formally undertake to perform the duties of the position according to law.

[17]The judge held that, while "[t]he claim for wrongful death is not such a chose in action . . . the power is an analogous one."

[18]Moreover, such conclusion would lead to a state of affairs whereby a voluntary administrator may only "negotiate or assign" a wrongful death claim. Such result would be illogical because the power to compromise a claim flows from the power to bring a legal action arising from such claim, and not vice versa.

[19]The parties have not asked us to decide issues such as the ability of the defendants to recover the settlement proceeds already disbursed.

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings.

*So ordered.*