# Eileen Kennedy *vs.* Contributory Retirement Appeal Board & another.[1]

No. 97-P-1721.

Suffolk. April 13, 1999. - July 27, 1999.

Present: Brock, Dreben, & Gillerman, JJ.

*Retirement. Public Employment,* Retirement. *Constitutional Law,* Equal protection of laws, Freedom of speech and press. *Words,* "Creditable service."

The provisions of G. L. c. 32, § 3(4A), which allow, for purposes of calculating pension benefits, the purchase of "creditable service" for teaching in a nonpublic school, were correctly construed by the Contributory Retirement Appeal Board as not applicable to prior service as a teacher in a nonpublic school in a foreign country. [427-428]

There was no merit to a claim that G. L. c. 32, § 3(4A), interferes with the free exercise of religion. [428-429]

CIVIL ACTION commenced in the Superior Court Department on June 4, 1996.

The case was heard by *David M. Roseman,* J.

*David C. Jenkins* for the plaintiff.

*Carol E. Nesson* for Boston Retirement Board.

GILLERMAN, J. The plaintiff seeks to reverse a decision of the Boston Retirement Board (board) denying her certain benefits. The facts, which we summarize, are not in dispute.

Born in 1937, the plaintiff entered a Roman Catholic religious order known as the Marist Missionary Sisters in 1954. She lived in Massachusetts until 1962 when she was sent by her order to Peru where she taught second and fourth grades in Catholic schools until April, 1966. The plaintiff returned to Massachusetts and attended graduate school until 1968 when she resumed her teaching duties in Peru. In 1973, she returned to the United States, left the Marist Missionary Sisters, and became a Boston public school teacher and, for the first time, a member of the State-Boston retirement system.

[1]Boston Retirement Board.

In May, 1994, the plaintiff applied to the board for permission to purchase credit for her years of teaching service in Peru. Her application was submitted under the provisions of G. L. c. 32, § 3(4A), the material provisions of which are set forth below. Her application was denied on July 8, 1994, and she appealed to the Contributory Retirement Appeal Board (CRAB). Following an evidentiary hearing at the Division of Administrative Law Appeals on July 18, 1995, the administrative magistrate affirmed the decision of the board, and on May 2, 1996, CRAB adopted the findings of the administrative magistrate and affirmed the decision of the board. The plaintiff appealed to the Superior Court, and the judge affirmed the decision of CRAB.

General Laws c. 32, § 5(2)(*a*), provides for pension benefits for Massachusetts public employees based on the number of years and months of "creditable service" that the employee has served. "Creditable service" is based on the duration of service to a governmental unit after becoming a member of the retirement system. Teachers are allowed to purchase additional "creditable service" upon the terms permitted by G. L. c. 32, §§ 3(4) & 3(4A), and other provisions not material to this appeal. At issue in this case is whether the plaintiff is entitled, under § 3(4A), to purchase additional credit for the period of time she taught in Peru.

Section 3(4A) provides, in part, as follows: "Any member in service . . . who was previously engaged in teaching . . . in a nonpublic school prior to January first, nineteen hundred and seventy-three may" purchase creditable service. There is nothing in § 3(4A) which recognizes prior service as a teacher in a nonpublic school in a foreign country as a basis for permitting the purchase of creditable service.

On the other hand, § 3(4) does make provision for extraterritorial teaching services in public schools. That section provides, in part, that any member in service may purchase credits for "service in any other state for any previous period as a teacher . . . in the public day schools or other day school under exclusive public control and supervision . . . . [T]he words 'service in any other state for any previous period as a teacher' . . . shall be deemed to include service rendered in an overseas dependent school conducted under the supervision of the department of defense of the government of the United States, and service rendered in the public schools of the Commonwealth of Puerto Rico." G. L. c. 32, § 3(4), as in effect prior to St. 1996, c. 188, § 1.

The plaintiff, understandably, does not claim to come within the provisions of § 3(4); she acknowledges that § 3(4) makes no mention of nonpublic school teaching service. Rather, she argues that the judge was wrong because he transported the "geographically restrictive language" in § 3(4) — public school service in the United States, Puerto Rico, and certain overseas governmental schools — to § 3(4A) which contains no such geographically restrictive language. The plaintiff asserts that we should abide by the familiar rule of accepting the plain meaning of the statute, see *Marco v. Green*, 415 Mass. 732, 739 (1993), and thus interpret it as encompassing nonpublic school service in a foreign country.

Simply stated, the plaintiff's argument comes to this: while conceding that she would not qualify under § 3(4) had she taught in a public school in Peru, she claims that because she taught in a nonpublic school in Peru she does qualify under the provisions of § 3(4A).

We disagree. Whether the provisions of § 3(4) inform the provisions of § 3(4A) turns on whether those two sections are related as to subject matter. See *Marco v. Green*, 415 Mass. at 736: "We strive to construe related statutes harmoniously so as to give rise to a consistent body of law." As an encouragement to teachers, both §§ 3(4) and 3(4A) provide teachers with the opportunity to "purchase creditable service." Section 3(4) provides that opportunity to teachers with public school service; § 3(4A) provides that opportunity to teachers with nonpublic school service. Teachers under § 3(4) are given that opportunity if they had provided teaching services in public schools in Massachusetts, or in any other State of the United States, or in Puerto Rico, or in an overseas dependent school which is under the supervision of the United States government. Teachers are also provided that opportunity if they provided teaching services in a nonpublic school prior to January 1, 1973.

The plaintiff's interpretation of § 3(4A) — that the absence of any reference in § 3(4A) to *where* the qualifying services may have been performed means that they may have been performed anywhere in the world — would provide a substantial benefit to teachers with nonpublic school service that would not be available to teachers with public school service. The Legislature, if we were to accept the plaintiff's argument, intended to be less flexible, and therefore less generous, to

teachers who had taught in public schools than to teachers who had taught in nonpublic schools. We perceive no reason for the Legislature to provide special rewards for teachers with non-public school service and to withhold those rewards from teachers with public school service. Much less do we perceive any reason for the Legislature to provide those rewards to teachers with nonpublic school service when doing so is at the expense of the public who will receive no benefit from overseas service in nonpublic schools.[2] Such a result "cannot reasonably be regarded as coming within the Legislature's intent." *Pysz* v. *Contributory Retirement Appeal Bd.*, 403 Mass. 514, 518 (1988). The Legislature, in § 3(4), carefully provided that specific extraterritorial service would qualify; the absence of any such provision in the later-enacted § 3(4A) brings us to the conclusion that the Legislature did not intend to qualify overseas service in nonpublic schools.[3]

The plaintiff argues that the result we reach would violate the equal protection clause of the Fourteenth Amendment to the Constitution of the United States as well as the First Amendment. Neither argument has merit.

The Legislature could reasonably conclude that teaching in nonpublic schools in foreign countries makes no significant contribution to education in the United States, while teachers working in public schools in the United States, Puerto Rico, and certain overseas governmental schools do make a significant contribution to our society. The classification is "rationally related to the furtherance of a legitimate State interest." *Murphy* v. *Department of Correction*, 429 Mass. 736, 739 (1999).

The plaintiff claims that she has been denied the right to practice her religion free of governmental interference. The disposition of this case works no interference with the plaintiff's religious rights. She may not purchase creditable services

---

[2]The defendants inform us that increased benefits are paid directly by the taxpayers through governmental appropriation to the pension fund of the retirement system, see G. L. c. 32, § 22(3)(*a*)-(*b*), and that only a small portion of the benefits comes from the member's contribution. See G. L. c. 32, § 22(2).

[3]The plaintiff also argues that an earlier version of § 3(4A), see Senate bill No. 1122 (1992), restricted the benefit to prior service in nonpublic schools in Massachusetts. The limitation was subsequently deleted. This history does not overcome the unintended consequences which her construction of § 3(4A) would produce.

because her services were performed in Peru, not because her teaching was sponsored by the church of her choice.

For these reasons we hold that the plaintiff is not entitled to the benefit of § 3(4A).

*Judgment affirmed.*