King, J.
Patricia Squeglia (Squeglia), an elementary school teacher, seeks judicial review, pursuant to G.L.c. 30A, §14, of a May 2, 2000 Contributory Retirement Appeals Board (CRAB) decision which affirmed a Teachers’ Retirement Board (TRB) decision denying her request to purchase creditable service for out-of-state work rendered as a special education tutor. A hearing on Squeglia’s motion for judgment on the pleadings was held on February 6, 2001. After considering the record and arguments of counsel, the court will annul CRAB’s decision for the reasons set forth below.
BACKGROUND
The following material facts, taken from the Division of Administrative Law Appeals (DALA) Magistrate’s findings, were adopted by CRAB and are not in dispute. Ms. Squeglia, a member of the Massachusetts Teachers’ Retirement System, is a certified elementary school teacher in Massachusetts where, at the time of the initial hearing in this matter, she was actively teaching in the Springfield Public Schools. In 1964, she was certified as an elementary school teacher for life by the Massachusetts Department of Education, in 1984 was certified to teach children with moderate special needs, and in 1990 she earned certification as a consulting teacher of reading. Her teaching career began in Massachusetts in 1964 and continued until 1967 when she moved to Ohio.
In Ohio, Ms. Squeglia earned additional teaching certifications including a special education certification. Specifically, in 1978, she was certified by the Ohio Department of Education to teach elementary school and in 1979 she became certified to provide special education. Utilizing her certifications, she worked during school years 1979 through 1983 in Ohio as a “Learning Disability Tutor” teaching children in grades 2-8. In that position, she provided individual attention and instruction to students with learning disabilities. During the school day, she would remove students from their classrooms to assist them in preparation for tests and provide additional instruction in their studies. Ms. Squeglia evaluated individual students before and after tutoring them and developed individual education plans for each student. In general, she provided the students with the extra help they needed as a result of their, disabilities.
Ms. Squeglia was a part-time employee in Ohio. She was paid on an hourly basis and worked during regular school hours (between 9:00 a.m. and 3:00 p.m.). The number of hours worked varied each week, but she tended to teach the same students. During the three years for which Ms. Squeglia seeks to purchase creditable service she worked 73%, 68% and 61% of full-time, respectively for school years 1979-80, 1980-81, 1981 -82. At the time, she was the only professional providing special education services at the elementary school in Westlake City, Ohio. The school district employed “Learning Disability Teachers” who were full-time employees performing the same duties and requiring the same certifications as the “Learning Disability Tutors.” Her work in Ohio qualified her for membership in the Ohio State Teachers’ Retirement System, the same system for full-time teachers. She was a member until her resignation in 1983. She subsequently withdrew her contributions from that system.
In 1984, Ms. Squeglia returned to work in Massachusetts as a special education teacher. The work she performed in Massachusetts was the same as the work she performed in Ohio except her work in the Commonwealth was on a full-time basis. She continued to work in the Massachusetts public schools and was a member of the Massachusetts Teachers’ Retirement *107 System at the time the DALA hearing was held in June 1999.
On December 30, 1993, Ms. Squeglia made a request to TRB to purchase creditable service for her teaching work in Ohio. TRB denied her request on October 2, 1995 on the basis that the services she performed in Ohio were as a tutor and not as a teacher as required by G.L.c. 32, §3(4).
In February 1996, she made a second request to TRB that she be permitted to purchase the creditable service for her out-of-state work. TRB denied her request in March 1996 based again on a lack of eligibility due to the nature of her work as a “tutor.” Ms. Squeglia filed an appeal on March 18, 1998, pursuant to G.L.c. 32, §16(4). On October 7, 1999, a DALA Magistrate, although finding Ms. Squeglia’s testimony credible, affirmed TRB’s denial. Subsequently, CRAB adopted the Magistrate’s findings of fact and conclusions of law and affirmed TRB’s denial of Ms. Squeglia’s request to purchase creditable service for her work in the Ohio public schools. CRAB concluded that:
The term “teacher” is defined by G.L.c. 32, §1 to include any person employed by a school committee ... on a basis of not less than half time as teacher . . . The definition of “teacher” does not include persons who are employed less than half time. This Board finds that Appellant was not employed in Ohio on at least a half time basis, so she does not meet the definition of “teacher” and is not entitled to purchase creditable service for that time.
In their memorandum in opposition to Ms. Squeglia’s motion for judgment on the pleadings, TRB also argues that Ms. Squeglia is not eligible to purchase creditable service for her work in Ohio because she was employed as a “tutor" in Ohio and not a “teacher” as required by G.L.c. 32, §3(4).
DISCUSSION
The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989). A court may set aside an administrative agency’s decision if it determines, based on the record before it, “that the substantial rights of any party may have been prejudiced because the agency decision is in violation of constitutional provisions: in excess of the statutory authority or jurisdiction of the agency: based upon an error of law; unsupported by substantial evidence: unwarranted by facts found by the court on the record as submitted: arbitrary or capricious: an abuse of discretion; or otherwise not in accordance with the law.” G.L.c. 30A, §14(7)(a)-(g). “Substantial evidence” is “such evidence as a reasonable mind might accept as adequate to support a conclusion.” G.L.c. 30A, §1(6). In reviewing the agency’s decision, the court must give due weight to the agency’s experience, technical competence, specialized knowledge and discretionary authority conferred upon it by statute. Seagrams Distillers Co. v. Alcoholic Beverage Control Com’n, 401 Mass. 713, 721 (1988). The court, however, is not bound by an administrative decision that was based on an error of law. Bagley v. Contributory Retirement Appeal Board, 397 Mass. 255, 259, n. 5 (1986).
The legal issue presented in this case is whether CRAB committed an error of law in ruling, based on the undisputed facts contained in the administrative record, that Ms. Squeglia was not a teacher within the definition of G.L.c. 32, §1 because her work in Ohio was not equivalent of teaching on at least a half-time basis as the statute provides. Although CRAB did not base its decision on the ground that a “tutor” is not a “teacher” as defined by G.L.c. 32, §1, TRB relies on this argument in its brief. Ms. Squeglia contends that reliance on either ground to support CRAB’S decision constitutes an error of law.
Under G.L.c. 32, §3(4), Massachusetts teachers may purchase credit for teaching they performed in public schools outside of the Commonwealth. The statute encourages teachers to work in the Commonwealth by allowing them to purchase credit for their out-of-state teaching service thus increasing their total retirement benefits. This is done by “purchasing the service” or paying the Massachusetts retirement fund what would have been withheld as deductions from her compensation had she performed the work in Massachusetts. Section 3(4) provides a member of the Teachers’ Retirement System:
who had rendered service in any other state for any previous period as a teacher ... in the public day schools . . . may, before the date any retirement allowance becomes effective for him, pay into the annuity savings fund ... an amount equal to that which would have been withheld as regular deductions from his regular compensation for such previous period, . . . had such services been rendered in a public school of the commonwealth and had he been a member of the teachers’ retirement system during the period the service was rendered.
Thus, a member of the Massachusetts Teachers’ Retirement System may obtain credit towards her retirement benefit for the years she worked out-of-state as a teacher, provided the out-of-state service, had it been performed in the Commonwealth, would be creditable.
The introductory sentence to the definitions set forth in G.L.c. 32, § 1 provides that “the following words and phrases . . . shall have the following meanings .. . unless a different meaning is plainly required by the context.” General Laws, c.32, §1 defines “teacher” as those teachers who are employed “on a basis of not less than half-time service as a teacher.” There is no dispute that Ms. Squeglia worked, on average, 67% of a full-time teaching schedule during the three-year period for which she seeks to purchase creditable *108 service. CRAB’s interpretation of G.L.c. 32, §3(4) requires that to be eligible, the teacher must have been hired by the out-of-state school system to work on at least a half-time basis as a teacher at the initial time of employment. Under this interpretation, a teacher who was hired for full-time work, but who only worked twenty-five percent of the time would be eligible to purchase retirement credit but a teacher who was hired without any guaranteed hours, but who had worked full-time, would not be eligible to purchase retirement credit for out-of-state teaching. CRAB offers no rational basis for distinguishing between someone who was hired to work on a half-time basis and someone who was hired without any guaranteed number of hours but who actually worked half-time, and the court finds no rational basis for making such a distinction. While the court is obligated to give deference to CRAB’s interpretation of the statute, the deference is not warranted where CRAB’s interpretation is not consistent with the clear and unambiguous language of the statute and leads to an unfair result. See Bolster v. Commissioner of Corps. & Taxn., 319 Mass. 81, 86 (1946); School Comm. of Springfield v. Board of Educ., 362 Mass. 417, 441 n. 22 (1972).
In interpreting §§1, 3(4), the court is guided by the principle that “[w]here the statute is not ambiguous or couched in terms suggesting that we must look beyond its express language, we construe the statute in accordance with its plain meaning.” Marco v. Green, 415 Mass. 732, 739 (1993). Moreover, words not otherwise defined in a statute should be interpreted “in accordance with their plain meaning.” Ford v. Town of Grafton, 44 Mass.App.Ct. 715, 725 (1998). Under these principles, it is clear in the context of §3(4), that §1 was intended to cover Ms. Squeglia’s teaching service performed in Ohio.[2] The plain meaning of the statute supports the court’s interpretation that the Legislature intended §3(4) to allow members of the Teachers’ Retirement System to purchase credit for teaching services rendered out-of-state provided the teacher worked on at least a half-time basis. There is no basis in the statute for excluding from the definition of “teacher” an individual who may not have worked half-time every week, but whose work overall exceeds half-time employment. It is undisputed that Ms. Squeglia worked in excess of half-time thus satisfying the statutory definition of “teacher.”
TRB’s contention that Ms. Squeglia was a “tutor” and not a “teacher" as required by §3(4) is simply not supported by the clear and unambiguous meaning of “teacher.” The plain meanings of “teacher” and “tutor” are interchangeable. The dictionary definition of a teacher is “one who or that which teaches or instructs; an instructor, one whose function is to give instruction, especially in a school.” Oxford English Dictionary vol. 17, 689 (2nd ed. 1989). Tutor is similarly defined as “a person charged with the instruction and guidance of another: a private teacher.” Oxford English Dictionary vol. 18, 731 (2nd ed. 1989). The two words are listed as synonyms of each other. The DALA Magistrate did not find that Ms. Squeglia’s job title as a “tutor” was of any significance under §3(4). Instead, she found Ms. Squeglia’s work in Ohio was “essentially the same” work that she rendered in Massachusetts but denied her request based on the number of hours she worked. With the nature of her teaching work in Ohio essentially the same as work done in Massachusetts for which she received retirement benefits, coupled with the undisputed fact that she worked at least half-time, there can be no question that her Ohio employment meets the statutory definition of “teacher.” For the foregoing reasons, the court concludes that CRAB’s decision is based on an error of law.
ORDER
For the foregoing reasons, judgment shall enter annulling the decision of the Contributory Retirement Appeals Board. The case is remanded to the Contributory Retirement Appeals Board for action consistent with this opinion.

 In their brief, TRB explains their rationale in Interpreting the statute as follows: “[I]f Squeglia’s position were correct, then a determination about her eligibility for membership in the retirement system could not be made until the end of each year. Payroll officers and school officials would not know whether to enroll her in the Teachers’ Retirement System, or whether to deduct contributions from her wages G.L.c. 32, §22.” This argument is not persuasive because teachers seeking to purchase credit under G.L.c. 32, §3(4) would have already completed their out-of-state employment so whether they worked at least half-time would be readily ascertainable.