WILLIE BYNES, JR., & another[1] *vs.* SCHOOL COMMITTEE OF
BOSTON & others.[2]

Suffolk. October 8, 1991. - November 21, 1991.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*School and School Committee*, Transportation of students. *Criminal Of-
fender Record Information. Anti-Discrimination Law*, Employee, Ter-
mination of employment. *Statute*, Construction.

General Laws c. 151B, § 4 (9), prohibiting employers from requesting cer-
tain criminal record information from employees and potential employ-
ees does not prohibit employers from requesting such information from
other sources. [266-269]
A school committee that requested Criminal Offender Record Information
(CORI) from the Criminal History Systems Board did not violate G. L.
c. 6, § 172, when it received and used certain CORI that was not re-
quested or authorized by the school committee's certification under the
statute. [270-271]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 21, 1987.

The case was heard by *Barbara J. Rouse*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*Harold L. Lichten* for the plaintiffs.

*Stephanie S. Lovell*, Special Assistant Corporation Coun-
sel, for School Committee of Boston & another.

*E. Susan Garsh* for National School Bus Service, Inc.

NOLAN, J. The plaintiffs, Willie Bynes, Jr., and Joan Dy-
ott, commenced this action against the defendants who ter-
minated their employment as school bus drivers in the city of

---

[1]Joan S. Dyott.

[2]National School Bus Service, Inc., and the superintendent of the Boston
public schools.

Boston because of their criminal records. They are appealing from a judgment of the Superior Court which determined, inter alia, that the defendants had not violated G. L. c. 151B, § 4 (9) (1990 ed.), and G. L. c. 6, § 172 (1990 ed.), in discharging the plaintiffs. This court granted the plaintiffs' application for direct appellate review. We affirm the judgment.

The school committee of Boston (school committee) provides bus transportation for approximately 25,000 Boston public school students through vendor contracts with private companies. Pursuant to such a contract, ARA Transportation, Inc. (ARA), provided school bus services from 1978 through the end of the 1984-1985 school year. In September of 1985, National School Bus Service, Inc. (National), succeeded ARA and undertook the transportation of the students through a vendor contract with the school committee. As part of the school committee's contract with both ARA and National, it had "the right to reject . . . at any time prior to or during employment, any person deemed . . . to be unfit for such employment."

In early 1985, as a result of the concerns of certain members of the school committee about the past criminal records of school bus drivers, school department staff requested the Criminal History Systems Board (board) to conduct background investigations on all Boston public school bus drivers pursuant to the Criminal Offenders Record Information (CORI) Act, G. L. c. 6, §§ 167-172 (1990 ed.). In accordance with the provisions of G. L. c. 6, § 172 (*c*), the board certified the school committee for access to criminal record information pertaining to convictions of individuals seeking employment or employed as school bus drivers. The board, consistent with its responsibility under G. L. c. 6, §§ 168, 171, reviews criminal records before releasing them to determine that only relevant information is released. Pursuant to the committee's certification, school department staff requested CORI on the bus drivers by stating: "I request that you furnish me with CORI on each of the drivers."

Bynes and Dyott had been school bus drivers since 1978 and 1977, respectively, until their dismissals in 1985. The

board sent the school committee information which indicated that Bynes had a 1972 conviction for assault by means of a dangerous weapon and a 1983 charge for assault and battery by means of a dangerous weapon. The 1983 charge was dismissed in 1984 after Bynes paid court costs and restitution to the victim, his wife. The information that the board sent to the school committee also indicated that Dyott was arrested and convicted in 1975 for possession of a controlled substance, marihuana, with intent to distribute, for which she received a suspended sentence and was placed on probation. On or about May 24, 1985, pursuant to the contract between the school committee and ARA, the school committee directed ARA to discharge twelve bus drivers, including Bynes.

On June 20, 1985, the school committee promulgated a mandatory disqualification regulation, which was incorporated into the contract between the school committee and National, as well as the collective bargaining agreement between National and the bus drivers' union. The regulation provided, in relevant part, that an individual would not be eligible for employment as a school bus driver if he or she either had been convicted at any time of possession with intent to distribute a controlled substance or had been convicted of a violent felony within the past five years. As a result of this policy, on August 23, 1985, the school committee instructed National not to hire certain drivers, including Bynes and Dyott, and National complied with the school committee's instructions.[3]

Although the plaintiffs' lawsuit initially contained four counts, their appeal concerns only their claims under G. L. c. 151B, § 4 (9), and c. 6, § 172, as to which judgment entered for the defendants.

1. *G. L. c. 151B, § 4 (9) claim.* The plaintiffs argue that the Superior Court judge misinterpreted G. L. c. 151B, § 4 (9), by failing to give it its plain meaning and also by failing

___

[3] While the school committee based its initial termination of Bynes on both the 1972 conviction and the 1983 charge, the later decision not to rehire Bynes, resulting from the mandatory disqualification regulation, relied only on the 1983 charge.

to construe § 4 (9) in light of G. L. c. 6, § 172.[4] The plaintiffs first contend that § 4 (9) bans all requests by an employer. for the prohibited information from any source. The plaintiffs assert, therefore, that both dismissals violated § 4 (9), because the requested CORI on Bynes included an arrest without a conviction, and the information on Dyott included a misdemeanor conviction more than five years prior to the request. Additionally, the plaintiffs argue that, in order to read c. 151B, § 4 (9), and c. 6, § 172, harmoniously, an employer should be limited in seeking CORI to that which the employer can seek under § 4 (9).

We disagree with the plaintiffs' interpretation of § 4 (9) for a variety of reasons. The plain language of the statute rebuts the plaintiffs' contention. "It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, . . . the sole function of the courts is to enforce it according to its terms." *Massachusetts Community College Council* v. *Labor Relations Comm'n*, 402 Mass. 352, 354 (1988), quoting *James J. Welch & Co.* v. *Deputy Comm'r of Capital Planning & Operations*, 387 Mass. 662, 667 (1982). If we were to read the phrase in § 4 (9) ("to request any information") as broadly as the plaintiffs read that phrase, to apply to any request from any source, we would render the subsequent phrase "to use any form of application or application

---

[4]General Laws c. 151B, § 4 (9), states, in relevant part, that it is an unlawful practice "[f]or an employer . . . in connection with an application for employment . . . or discharge of any person . . . to request any information, to make or keep a record of such information, to use any form of application or application blank which requests such information, or to exclude, limit or otherwise discriminate against any person by reason of his or her failure to furnish such information through a written application or oral inquiry or otherwise regarding: (*i*) an arrest . . . in which no conviction resulted . . . or (*iii*) any conviction of a misdemeanor where the date of such conviction . . . occurred five or more years prior to the date of such application for employment or such request for information . . . .

"No person shall be held under any provision of any law to be guilty of perjury or of otherwise giving a false statement by reason of his failure to recite or acknowledge such information as he has a right to withhold by this subsection."

blank which requests such information" superfluous. Surely the plaintiffs' interpretation of "request any information" would include such requests on application forms. It is another elementary rule of statutory construction that a statute should not be read in such a way as to render its terms meaningless or superfluous. *Globe Newspaper Co. v. Commissioner of Revenue*, 410 Mass. 188, 192 (1991). *International Org. of Masters, Mates & Pilots v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.*, 392 Mass. 811, 813 (1984).

The Legislature's intent was merely to protect employees from such requests from their employers and not to proscribe employers from seeking such information elsewhere. The legislative history of § 4 (9) supports this interpretation. See *Quincy City Hosp. v. Rate Setting Comm'n*, 406 Mass. 431, 443 (1990) ("Statutes are to be interpreted not based solely on simple, strict meaning of words, but in connection with their development and history, and with the history of the times and prior legislation"). As originally enacted, G. L. c. 151B, § 4 (9), inserted by St. 1969, c. 314, and as amended by St. 1972, c. 428, prohibited discrimination against employees or applicants who failed to furnish certain criminal history information, and it also placed restrictions on application forms. The relevant change in the 1974 revision of § 4 (9) prohibited requests for this information and the maintenance of records including this information. St. 1974, c. 531. The Superior Court judge's reading of § 4 (9), as amended, that it is limited to an employer's request for information from an employee or prospective employee, is consistent with the original purpose of the statute, which was to protect employees from discrimination for their failure to provide their employers with restricted criminal history information.

Nothing indicates that the Legislature intended that the limited provisions of the 1974 version of § 4 (9) would have the broad reach envisioned by the plaintiffs. The plaintiffs' interpretation of § 4 (9) would turn that limited prohibition against an employer's request to an employee or prospective employee into a general prohibition against an employer's

use of such information. If that were the Legislature's intent, surely the Legislature might have utilized the broader anti-discrimination language already utilized in G. L. c. 151B, § 4 (1) (1990 ed.), concerning employment discrimination, or even might have just amended § 4 (1) to include the protections envisioned by the plaintiffs.

The Massachusetts Commission Against Discrimination (commission), the agency responsible for enforcing c. 151B, has also construed the protection afforded by § 4 (9) to be "quite narrow in scope" and "directed primarily at the pre-employment inquiry, particularly the application form." *McGowan* v. *Stoneham Police Dep't,* 6 M.D.L.R. 1639, 1648 (1984), quoting *LeBoeuf* v. *Lodding Eng'g*, 2 M.D.L.R. 1381, 1383 (1980). The commission's interpretation of its governing statute is entitled to substantial deference. *Rock* v. *Massachusetts Comm'n Against Discrimination*, 384 Mass. 198, 204 (1981). In *McGowan*, the commission specifically upheld a hearing commissioner's determination that the use of an individual's arrest record, not directly obtained from that individual, in making employment decisions does not violate § 4 (9).[5] *McGowan, supra* at 1647. The commission also stated that an interpretation of § 4 (9) which would prohibit the mere use of arrest records by employers "is against the weight of the authority on this point." *Id.*

Having determined that G. L. c. 151B, § 4 (9), only affects an employer's ability to request certain criminal record information from employees and potential employees, we have no need to consider the relationship between § 4 (9) and the CORI statute. Therefore, we need not determine whether the school committee is an employer of the school bus drivers for § 4 (9) purposes.

---

[5]Contrary to the plaintiffs' contention, *McGowan* does not support their interpretation of § 4 (9). Without expressing our opinion on the merits of the commission's decision, we note that the commission merely determined that it was inappropriate for a police department to use its ability to obtain criminal offender information under G. L. c. 6, § 172 (*a*), to effectuate its role as an employer. *McGowan, supra* at 1651. That is not the issue in this case.

*2. The CORI claim.* The next claim raised by the plaintiffs is that the defendants violated the CORI statute by requesting, obtaining, and then utilizing CORI in the dismissal of the plaintiffs. The relevant portion of G. L. c. 6, § 172, is set out in the margin.[6] Because the board limited the school committee's CORI access to criminal charges that resulted in convictions, and because the school committee received and used information concerning Bynes's 1983 assault charge, allegedly in violation of the school committee's certification, the plaintiffs contend that the defendants violated § 172.[7]

Bynes initially claims that the school committee's request for and receipt of CORI was illegal because its request was too broad and not limited to its restricted authorization. It is the board, however, and not the recipient, which "has the duty to assure the accuracy and completeness of CORI, as well as to prevent its unauthorized disclosure." *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 648 (1978). There is no language within the CORI statute which would lead us to the conclusion that the school committee, or any other certified individual or agency, shares this responsibility with the board.

Bynes also asserts that the school committee violated G. L. c. 6, § 172, by using CORI that exceeded its certification, even if it was without fault in receiving unauthorized CORI. Bynes appears to read the clause "in violation of the provisions of this statute" in § 172, as modifying the antecedent clause "that receives or obtains criminal offender information." In other words, Bynes finds a form of strict liability within the statute whereby the school committee can be lia-

---

[6]General Laws c. 6, § 172, states in relevant part: "Any individual or agency, public or private, that receives or obtains criminal offender record information, in violation of the provisions of this statute, whether directly or through any intermediary, shall not collect, store, disseminate, or use such criminal offender record information in any manner or for any purpose."

[7]Because the school committee was certified to receive the information that it received concerning Dyott, this claim applies only to Bynes.

ble for the use of unauthorized CORI, even if it is blameless, merely if its receipt of the information is in violation of § 172.

We recognize "the general rule of statutory as well as grammatical construction that a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation." *Moulton* v. *Brookline Rent Control Bd.*, 385 Mass. 228, 230-231 (1982), quoting *Druzik* v. *Board of Health of Haverhill*, 324 Mass. 129, 133 (1949). Because the statute delegates to the board the responsibility for preventing unauthorized disclosures of CORI, any interpretation of the statute that would require individuals or agencies who have been certified by the board for access to information to undertake their own investigations of the lawfulness of their receipt of information from the board would be inconsistent with the dominant purpose of the statute.

We believe that the better reading of the statute, a reading more consistent with the Legislature's intent, is that the clause "in violation of the provisions of this statute" refers to "[a]ny individual or agency" at the beginning of the sentence. Under this reading, the plaintiff must prove that the individual or agency is in violation of the statute and at fault. Assuming, without deciding, that the school committee received unauthorized CORI on Bynes, he asserts no facts which would create any inference that the school committee violated the statute or was at fault in its CORI request. The simple statement — "I request that you furnish me with CORI on each of the drivers" — where the board bears the responsibility for unauthorized disclosures, hardly constitutes fault on the part of the school committee. In addition, each letter from the board to the school committee that contained CORI on the bus drivers included the statement that it was "[p]ursuant to the certification issued by the Criminal History Systems Board on March 2, 1982."

For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*