NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-920                                            Appeals Court

COMMONWEALTH  vs.  LEOPOLD L., a juvenile.

No. 18-P-920.

Suffolk.    October 2, 2019. - January 8, 2020.

Present:  Wolohojian, Blake, & Englander, JJ.

Practice, Criminal, Juvenile delinquency proceeding, Revocation
     of probation, Hearsay, Continuance, Sentence.  Juvenile
     Court, Delinquent child, Jurisdiction.  Jurisdiction,
     Juvenile delinquency proceeding.  Moot Question.  Due
     Process of Law, Identification, Sentence.  Evidence,
     Identification, Photograph.  Department of Youth Services.

     Complaint received and sworn to in the Suffolk County
Division of the Juvenile Court Department on August 10, 2015.

     A proceeding for revocation of probation was heard by
Joseph F. Johnston, J.

     Caroline I. Alpert for the juvenile.
     Julien M. Mundele, Assistant District Attorney, for the
Commonwealth.

     WOLOHOJIAN, J.  This appeal from a probation revocation in

the Juvenile Court raises a number of issues of first

impression, including whether the juvenile, who turned eighteen

after committing the crime that violated his probation but before the probation violation hearing, could be committed to the custody of the Department of Youth Services (DYS) until age nineteen. For the reasons set out below, we conclude as a general proposition that the Juvenile Court has both the jurisdiction and the authority to impose a probation revocation disposition to age nineteen. But because the juvenile's underlying suspended delinquency sentence committed him to DYS custody only to age eighteen, the judge, after deciding to revoke the juvenile's probation, could impose only the original suspended sentence; he could not extend it. For that reason, we vacate the juvenile's commitment to DYS custody to age nineteen and order that the original sentence be imposed nunc pro tunc. In addition, because we reject the juvenile's arguments that the finding of violation rested on unreliable hearsay evidence, and that continuances allowed in excess of the time limits for probation violation hearings in the Juvenile Court constitute reversible error, we affirm the finding of probation violation and the revocation of probation. See Commonwealth v. Padua, 479 Mass. 1004, 1005 (2018) (conviction need not be vacated simply because sentence was incorrect).

Background. In August 2015, a complaint was brought charging the juvenile with delinquency by reason of unarmed robbery, G. L. c. 265, § 19 (b), and assault and battery, G. L.

c. 265, § 13A (a) (the 2015 charges).  On November 9, 2016, the then-sixteen year old juvenile admitted to sufficient facts and pleaded delinquent to the charges.  He was committed to DYS custody "suspended until age eighteen," and placed on probation with conditions to February 8, 2018 (his eighteenth birthday).

On January 22, 2018, not long before he was to turn eighteen, a new delinquency complaint charged the juvenile with having committed armed assault with intent to murder, G. L. c. 265, § 18 (b), assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b), and malicious damage to a motor vehicle, G. L. c. 266, § 28 (a) (the 2018 charges).  He was arraigned in Juvenile Court that same day, and ordered held on $20,000 cash bail.  A pretrial conference was scheduled for February 8, 2018.

Also on January 22, 2018, the juvenile was served with a notice of probation violation alleging that the new criminal conduct violated the terms of his 2016 probation.[1]  The juvenile did not contest a preliminary finding of violation, and the judge found probable cause and ordered that the juvenile be held without bail.  See Juvenile Court Standing Order 1-17 § V(c)

---

[1] The juvenile had previously been charged with having committed technical violations of probation.  The first of these was withdrawn; he was found in violation of probation on the second occasion and reprobated.

(2017).  The probation violation hearing was set for February 8, 2018.

Thus, as of January 22, 2018, the seventeen year old juvenile was held on $20,000 cash bail on the 2018 delinquency complaint, he was held on no bail on the probation violation notice, and the parties were to appear on February 8, 2018, both for the probation violation hearing and for a pretrial conference on the 2018 delinquency complaint.  February 8, 2018 was the juvenile's eighteenth birthday.

On the morning of the February 8, 2018 hearing, the juvenile filed a motion arguing that the Juvenile Court's jurisdiction over the probation violation would end by the end of the day, as would its ability to impose any sentence.  The Commonwealth sought a continuance in order to address these issues, and because it had not summonsed the necessary witnesses for the probation hearing.  The Commonwealth also informed the judge that it was still reviewing whether to indict the juvenile as a youthful offender.  Over the juvenile's objection, the judge allowed a continuance to March 8, 2018, set a briefing schedule with respect to the juvenile's motion, and informed the Commonwealth that it should be prepared to go forward with its evidence on the probation violation on March 8.  The judge also extended the juvenile's probation to March 8, without prejudice to the juvenile's jurisdictional argument.

On February 12, 2018, the juvenile filed an emergency petition for relief with the Supreme Judicial Court under G. L. c. 211, § 3, challenging both the continuance and the Juvenile Court's jurisdiction to extend probation beyond the juvenile's eighteenth birthday.  A single justice of the Supreme Judicial Court denied the petition in part because the juvenile continued to be held on bail on the new charges, which he had not challenged.[2]

The parties next appeared in Juvenile Court on March 8, 2018, as scheduled.  As to the 2018 delinquency complaint, the Commonwealth informed the judge that it had begun to present evidence to a grand jury and intended to seek an indictment.  As to the probation violation, the juvenile again pressed his argument that the court lacked jurisdiction and authority given the juvenile's age.  The Commonwealth sought a continuance because its sole witness (the investigating officer) on the probation violation was unavailable given unexpected childcare issues caused by snow and school cancellations.  The judge noted on the record that there had been a significant snowfall the

---

[2] The single justice also denied the petition for the reasons in the Commonwealth's opposition, which is not part of the record before us.  The Commonwealth has not argued that the single justice's ruling has any binding effect here.  Without knowing the bases for the single justice's ruling or the arguments made to him, we decline to give it any such force.

previous evening resulting in school cancellations and even a delayed opening of the court. Over the juvenile's objection, the judge continued the probation violation hearing for one week to March 15, 2018. The judge also denied the juvenile's request that the judge terminate his detention.

The evidentiary portion of the probation violation hearing was conducted on March 15, 2018, with argument conducted the following week on March 22, 2018, after the judge had had an opportunity to review the video recording (video) exhibits.[3] The evidence (which came in through the investigating officer) showed the following. On January 14, 2018, the victim and his friend, driving two separate cars, returned home after having gone out to get something to eat. As the victim was backing into a parking spot, three to four young men appeared. Two wielded baseball bats and smashed the windows of the victim's car. Another then reached in and stabbed the victim. The victim's friend managed to disperse the group by driving his car toward them, and the victim then drove himself to a local medical clinic for treatment. Finding it closed, the victim called 911. He recounted the incident to the responding officer and was then transported by ambulance to a hospital, where the

---

[3] We, like the Juvenile Court judge, have viewed the video recording of the police interview of the juvenile as well as the surveillance footage.

officer conducted a short interview in which the victim described his assailants only as younger Hispanic males.

The victim's friend was interviewed by police at the station shortly after the attack. The friend's account was consistent with what we have set out above and added the following. He was "pretty sure" that one of the attackers was the juvenile. The day before the incident, the friend and the victim had seen the juvenile about fifty yards from where the assault occurred. Upon seeing the juvenile, the victim said, "[O]h, there goes [the juvenile] and me and him have a beef, as in like a feud, fight situation." The juvenile was wearing a grey jumpsuit.

Five days after the incident, after having been released from the hospital, the victim appeared at the police station with his father in order to be interviewed. The victim repeated what he had previously said about the incident but added the following. The victim identified the juvenile as the person who broke the car windows and hit his hand with a bat. He had heard from a friend that the juvenile had used a metal bat in a previous (unrelated) assault. The victim stated that the juvenile's nickname was "Puerto Rico," and told the officer where the juvenile lived, stating that he had known the juvenile for about two years and that they had previously been friends. The victim confirmed that he had seen the juvenile the day

before the attack and that the juvenile was wearing the same hoodie.

The victim added that he recognized the stabber, described him as having "long hair," and identified him as Adam,[4] whom he (the victim) had known for about two years and saw approximately monthly.  He provided Adam's address.  The victim also said that he had been involved in a physical altercation with Adam a few months earlier.

A surveillance video obtained from a nearby building confirmed the details of the attack in all particulars, but did not show any of the attackers' faces.

The victim identified both the juvenile and Adam from double-blind photographic arrays.  When the police went to arrest the juvenile at his home, his family attempted to divert police while the juvenile escaped.  The juvenile was apprehended as he fled out the back exit.

After hearing the evidence, the judge continued the hearing to March 22, 2018, so that he could review the videos.  When the parties returned on that date, the juvenile again argued that the court did not have jurisdiction over him given his age, that both due process and double jeopardy would be violated should any disposition be imposed beyond that imposed in the original

---

[4] A pseudonym.

sentence on the 2015 charges, that the hearsay evidence was not reliable, and that the evidence did not establish by a preponderance of the evidence that the juvenile participated in the attack. The judge disagreed, found the juvenile in violation of his probation, revoked the suspended sentence, and committed him to DYS custody to age nineteen (i.e., to February 8, 2019). This appeal followed.[5]

Discussion. The juvenile raises three primary arguments on appeal, all of which are preserved. First, he argues that he was deprived of due process because the probation violation rested solely on unreliable hearsay. Second, he contends that the judge committed reversible error by continuing the probation violation hearing, over the juvenile's objection, without good cause and beyond the period allowed by Juvenile Court Standing Order 1-17, and G. L. c. 119, § 56. Third, the juvenile argues that the judge imposed an illegal sentence when he committed him to DYS custody until his nineteenth birthday.

As an initial matter, on our own initiative, we have first considered whether this appeal is moot given that the juvenile's commitment to DYS custody has ended and there is no effective relief we can provide with respect to that sentence even though

---

[5] The juvenile was subsequently indicted as a youthful offender on the 2018 charges, which were transferred to the Superior Court.

we conclude that it was illegal.  An appeal from a probation revocation does not become moot simply because the person has finished serving his or her sentence.  This is because the revocation "may have collateral consequences" in the future apart from the sentence itself.  Commonwealth v. Kendrick, 446 Mass. 72, 73 n.1 (2006).  See G. L. c. 119, § 60 (juvenile probation violation adjudication is admissible "in subsequent delinquency or criminal proceedings against the same person").  In addition, although it is true that we can offer no effective relief with respect to the sentence the juvenile has already served, the same is not true with respect to the probation violation finding itself, which we could reverse were we to agree (which we do not) with the juvenile's view that it rests on insufficient evidence and unreliable hearsay.[6]  See Padua, 479 Mass. at 1005 (defendant has continuing interest in obtaining relief from conviction itself even if he has completed serving sentence).  See also Commonwealth v. Pena, 462 Mass. 183, 189 (2012), and cases cited ("probation revocation may have collateral consequences beyond term of incarceration").  For all

---

[6] Even were we to conclude that the appeal were moot, we note that several of the juvenile's arguments regarding his sentence turn on his "aging out" of the Juvenile Court's jurisdiction or authority, and are thus particularly susceptible of evading review upon repetition in future cases.  See Delaney v. Commonwealth, 415 Mass. 490, 492 (1993).

of these reasons, we conclude this appeal is not moot and we now turn to the arguments raised by the parties.

1. Hearsay. The juvenile argues that the victim's identification of him (which was introduced through the testifying officer) was unreliable hearsay and therefore could not, consistent with due process, be the sole basis upon which to conclude that the juvenile was one of the assailants. See Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973); Commonwealth v. Milton, 427 Mass. 18, 22 (1998). He points in particular to the fact that the victim did not identify his assailants immediately after the crime and that the victim's identification of the juvenile in the photographic array rested on his previous dealings with the juvenile rather than on seeing the juvenile during the attack.

In assessing the juvenile's argument, we begin by noting that this is not a case where probation revocation rested entirely on hearsay; indeed, the principal investigating officer testified at the hearing. Contrast Commonwealth v. Durling, 407 Mass. 108, 110 (1990) (sole evidence of probation violation was two police reports about which probation officer had no personal knowledge). The officer responded to the scene, observed and questioned the victim who had shortly before been stabbed, investigated the scene of the attack, saw the damaged car, went to the hospital where the victim was treated, interviewed both

the victim and his friend, wrote a police report, and obtained a surveillance video showing the attack.  The officer was subject to confrontation[7] on all of these matters.  Moreover, the surveillance video, which would be admissible in evidence, confirmed the attack and many of its details.

This is also not a case where the accuracy of the witness reporting the hearsay evidence is questioned.  See Commonwealth v. Negron, 441 Mass. 685, 692 n.8 (2004) (admission of hearsay impliedly includes "an additional implicit determination that the witness who is reporting the hearsay . . . is doing so accurately").  The juvenile does not question that the officer accurately recounted the victim's statements identifying the juvenile; indeed, any such argument would be foreclosed by the video recording of the interview, which confirms the officer's testimony.

Thus, the narrow question before us is only whether the victim's identification of the juvenile bore sufficient indicia of reliability for the judge to conclude by a preponderance of the evidence that the juvenile participated in the attack.  "The

---

[7] The confrontation right at issue in probation violation proceedings is the due process right of confrontation described in Durling, 407 Mass. at 117-119.  It is not the right of confrontation under the Sixth Amendment to the United States Constitution or under art. 12 of the Massachusetts Declaration of Rights.  Commonwealth v. Wilcox, 446 Mass. 61, 67-68, 70-71 (2006).

[juvenile] court may rely on hearsay as evidence of a probation violation only if the court finds in writing that the hearsay is substantially reliable."  Juvenile Court Standing Order 1-17 § VII(b).

In written findings required by Juvenile Court Standing Order 1-17 § VIII(c), the judge determined that the out-of-court statements of identification were reliable because the victim knew the perpetrators based on previous interactions with them, knew where the perpetrators lived, was able to identify the attackers in separate photographic arrays, the information was internally consistent, and the victim relied on personal knowledge in making the identifications.  See Juvenile Court Standing Order 1-17 § VII(b) (reproduced in the margin).[8]  The

---

[8] Juvenile Court Standing Order 1-17 § VII(b) provides:

"The court may rely on hearsay as evidence of a probation violation only if the court finds in writing that the hearsay is substantially reliable.  In determining if hearsay is substantially reliable, the court may consider, among any other relevant factors, whether that evidence

"(1) is based on personal knowledge and/or direct observation, rather than on other hearsay;

"(2) involves observations recorded close in time to the events in question;

"(3) is factually detailed, rather than generalized and conclusory;

"(4) is internally consistent;

judge's reasoning was well-grounded in the evidence and we agree that it provided an ample basis upon which to conclude the hearsay was reliable. See Commonwealth v. Nunez, 446 Mass. 54, 59 (2006). In addition to the factors highlighted by the judge, we note that the victim's identification of the juvenile was corroborated by the first-hand observations of his friend (who provided the same identification immediately after the crime, with no suggestion of coordination with the victim), was consistent with the victim's hostile relationship with the juvenile, and was bolstered by the juvenile's demonstrated consciousness of guilt when he attempted to evade the police. In addition, when assessing the reliability of the victim's statements, we take into account that "it is a crime for a citizen to make a false report of a crime to police officers, see G. L. c. 269, § 13A, a factor that 'bolsters the reliability of the report[].'" Negron, 441 Mass. at 691-692, quoting Durling, 407 Mass. at 121. See Commonwealth v. Patton, 458 Mass. 119, 132-133 (2010) (nonexclusive list of factors derived

---

"(5) is corroborated by any evidence provided by the probationer;

"(6) was provided by a disinterested witness; or

"(7) was provided under circumstances that support the veracity of the source (e.g., was provided under the pains and penalties of perjury or subject to criminal penalties for providing false information)."

from Durling and Commonwealth v. Delaney, 36 Mass. App. Ct. 930, 932 n.4 [1994] bearing on reliability of hearsay).

2. Continuances. The juvenile argues that the probation violation hearing was several times continued over his objection, without good cause, in violation of Juvenile Court Standing Order 1-17 § VI(e), was once continued for more than fifteen days, in violation of G. L. c. 119, § 56, and that those continuances cumulatively resulted in the hearing occurring more than fifteen days after the juvenile was served with the probation violation notice, in violation of Juvenile Court Standing Order 1-17 § III(b)(iii). Although we conclude that there was good cause for each of the continuances, we agree with the juvenile that the continuances exceeded the deadlines contained in Juvenile Court Standing Order 1-17, and in one instance exceeded the time limit in G. L. c. 119, § 56. Nonetheless, we conclude that the juvenile suffered no cognizable prejudice from the delay.

Juvenile Court Standing Order 1-17 sets out procedures for probation revocation proceedings in the Juvenile Court.[9] Section III(b)(iii) pertains to the scheduling of probation violation hearings and provides:

---

[9] The Chief Justice of the Juvenile Court Department may issue standing orders, subject to approval of the Supreme Judicial Court. G. L. c. 218, § 60.

"The probation violation hearing shall be scheduled to commence on the date of the pretrial hearing for the new delinquency or criminal complaint or youthful offender indictment, unless the court expressly orders an earlier hearing. The hearing shall be scheduled for a date certain no less than seven days after service on the probationer of the Notice of Violation/Hearing unless the probationer waives said seven day notice period. The hearing date shall not be later than fifteen days after service of the Notice of Violation/Hearing without the probationer's consent if he or she is held [as the juvenile in this case was] pursuant to Section V of this standing order. In any case, the hearing shall not be later than thirty days after service of the Notice of Violation/Hearing, except in extraordinary circumstances. In scheduling the pretrial hearing on the new delinquency or criminal complaint or youthful offender indictment together with the probation violation hearing, the court shall give primary consideration to the need for promptness in conducting the probation violation hearing."

Also pertinent is § VI(e) of Standing Order 1-17, which states that "[p]robation violation hearings shall be continued only by a judge and only for good cause shown."[10]

Taken together, these provisions require that (1) a probation violation hearing be scheduled no less than seven days after the juvenile is served with notice of the probation violation (unless waived by the juvenile), (2) the hearing shall occur within fifteen days after service of the notice if (as here) the juvenile is held in custody, (3) in any event, absent

---

[10] Section VI(e) also provides that "[t]he reason of any continuance shall be stated by the judge and entered in the case docket."

"extraordinary circumstances," the hearing shall occur no later than thirty days after service of the violation notice, and (4) continuances require a showing of good cause.  The parties have not pointed us to, nor have we found, any appellate case construing or examining the application of Standing Order 1-17.

We have also found no appellate cases construing the provision of G. L. c. 119, § 56, that provides:

> "Hearings upon cases arising under sections fifty-two to eighty-four, inclusive, [which includes probation violation proceedings under section fifty-nine], may be adjourned from time to time; provided however, that no adjournment shall exceed fifteen days at any one time against the objection of the child."

Section 53 of G. L. c. 119 states that § 56 (like other sections of c. 119) "shall be liberally construed so that the care, custody and discipline of the children brought before the court shall approximate as nearly as possible that which they should receive from their parents."  G. L. c. 119, § 53.  Thus, although a judge has discretionary authority to allow continuances, he or she is to keep this interpretive principle in mind when assessing whether (and for how long) to grant a continuance in particular circumstances.  Regardless, § 56 imposes a bright-line limit of fifteen days for any individual continuance, which is written in unequivocal and mandatory language:  "no adjournment shall exceed fifteen days at any one time" (emphasis added).  See Hashimi v. Kalil, 388 Mass. 607,

609 (1983) ("The word 'shall' is ordinarily interpreted as having a mandatory or imperative obligation").[11]

We now examine these provisions with respect to each of the procedural events in this case.

The juvenile was served with the probation violation notice on January 22, 2018, when he was also arraigned on the new delinquency complaint. He next appeared in court on February 8, 2018, seventeen days after the arraignment, for both a pretrial conference on the delinquency complaint and a hearing on the probation violation. This date was suggested by counsel for the

---

[11] Relying on the sentence of G. L. c. 119, § 56, that states that G. L. c. 276, § 35, "relative to recognizance in cases continued shall apply to cases arising under sections fifty-two to eighty-four, inclusive," the Commonwealth argues that § 56 does not apply at all to delinquency and youthful offender proceedings. General Laws c. 276, § 35, provides, in pertinent part:

> "[T]he defendant . . . may recognize in a sum and with surety or sureties to the satisfaction of the court or justice, or without surety, for his appearance for . . . trial . . . . While the defendant remains committed, no adjournment shall exceed thirty days at any one time against the objection of the defendant."

For two reasons, we do not read the sentence in c. 119, § 56, as broadly as the Commonwealth. First, the Commonwealth's reading would cause the thirty-day limit on continuances contained in § 35 to supplant the fifteen-day limit in § 56, and thus render meaningless the first sentence of § 56. Second, the Commonwealth's reading ignores the limiting phrase "relative to recognizances." "We do not read a statute so as to render any of its terms meaningless or superfluous. Bynes v. School Comm. of Boston, 411 Mass. 264, 268 (1991), and cases cited." Banushi v. Dorfman, 438 Mass. 242, 245 (2002).

juvenile, and therefore was within the provisions of Standing Order 1-17 § III(b)(iii) and complied with G. L. c. 119, § 56; the juvenile raises no issue concerning it now.

The juvenile does, however, challenge the one-month continuance of the probation violation hearing from February 8, 2018, to March 8, 2018. He contends that there was no good cause for the continuance and, furthermore, that it violated G. L. c. 119, § 56, and Standing Order 1-17 § III(b)(iii). We disagree with the juvenile's contention that the judge abused his discretion in finding good cause for this continuance, see Commonwealth v. Jackson, 376 Mass. 790, 792 (1978) (determination of continuance "will be disturbed only if there was a clear abuse of discretion"), but agree that it violated § III(b)(iii) of the standing order and G. L. c. 119, § 56.

"In considering a request for a continuance, a trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted." Commonwealth v. Super, 431 Mass. 492, 496-497 (2000), quoting Commonwealth v. Gilchrest, 364 Mass. 272, 276 (1973). Although the Commonwealth's simple assertion at the February 8 hearing that it had failed to summons any witnesses, without anything more or further inquiry by the judge, would not constitute good cause, see Commonwealth v. Perkins, 464 Mass. 92, 103-104

(2013), the hearing transcript reveals that the judge's decision to allow the continuance did not rest on this ground. Instead, the judge's primary reason for granting the continuance was the filing of the juvenile's motion -- that very morning -- challenging the court's jurisdiction over him. The one-month continuance followed from the Commonwealth's need to respond to the motion, and from the schedule the judge set to allow both the Commonwealth and the juvenile time to submit further briefing on those complicated issues. See Commonwealth v. Lester L., 445 Mass. 250, 259 (2005) (relevant inquiry with respect to good cause is Commonwealth's reasons for continuance). The judge was entitled to consider that, although in other cases a continuance might result in prejudice by extending a juvenile's detention, in this case no such prejudice would result because the juvenile was being detained on the new delinquency charges, not only on the probation violation. Thus, no prejudice to the juvenile acted as a counterweight to the Commonwealth's need for the continuance.

Although there was good cause for the one-month continuance, it nonetheless ran afoul of the requirement in Standing Order 1-17 § III(b)(iii) that probation violation hearings be conducted within fifteen days of service of the notice where (as here) the juvenile is in detention and does not consent to the delay. It also violated G. L. c. 119, § 56's

prohibition against continuances of more than fifteen days at any one time.

Turning to the one-week continuance from March 8, 2018, to March 15, 2018, where the Commonwealth's witness was unexpectedly unavailable due to childcare demands caused by a large snowfall and school cancellations, we also conclude that the judge did not abuse his discretion in finding good cause to continue the hearing.  Again, the continuance worked no prejudice since the juvenile was being held on the delinquency charges in addition to the probation violation.  That said, the one-week continuance meant that the hearing on the probation violation would take place more than seven weeks after the juvenile had been served with the probation violation notice.  This exceeded two time limits in Standing Order 1-17 § III(b)(iii):  first, the hearing was not to take place, without the juvenile's consent, more than fifteen days after service of the probation violation notice where (as here) the juvenile was in detention; second, "[i]n any case, the hearing shall not be later than thirty days after service of the Notice of Violation/Hearing, except in extraordinary circumstances." The Commonwealth has not argued extraordinary circumstances here.

All that said, we conclude that none of these delays, either individually or cumulatively, requires reversal of the

probation violation finding.  In the related context of G. L. c. 276, § 35, which sets time limits on continuances in adult criminal cases, the Supreme Judicial Court has said that "[a] continuance in violation of G. L. c. 276, § 35, does not automatically provide the defendant with the right to have the case against him dismissed."  Commonwealth v. Ludwig, 370 Mass. 31, 34 n.1 (1976).  Instead, "a continuance in excess of that limitation triggers an examination as to whether the delay was excusable and whether the defendant was prejudiced thereby."  Commonwealth v. Boyer, 6 Mass. App. Ct. 938, 939 (1978).  Here, as we have set out above, there was good cause for the continuances and no prejudice to the juvenile from them.  To the extent the juvenile claims prejudice because the Commonwealth would not have been prepared to go forward on the days at issue, this understanding of prejudice, if accepted, would mean that no continuance could ever be granted regardless of the circumstances -- a proposition that is not only illogical but one for which we have found no support.

3.  Illegal sentence.  The juvenile contends that committing him to DYS custody to age nineteen was an illegal sentence for three reasons.  First, relying on G. L. c. 119, § 58, he contends that because he committed the probation violation before he turned eighteen, the Juvenile Court had no jurisdiction to impose a sentence beyond his eighteenth

birthday.[12]  Second, he argues that, even if the court had

jurisdiction to impose a sentence to age nineteen, the judge

could not do so here because the underlying suspended sentence

ended at age eighteen.  Third, the juvenile argues that, should

we disagree with the latter proposition, then a constitutional

concern is raised with the knowingness of his plea.  Because we

conclude that, although the court had jurisdiction, the judge

could not extend the suspended sentence, we need not reach this

last argument.

a.  <u>Jurisdiction</u>.  The Juvenile Court has jurisdiction to

adjudge delinquent "a child between 12 and 18 years of age who

commits any offense against a law of the commonwealth; provided,

however, that such offense shall not include a civil infraction,

a violation of any municipal ordinance or town by-law or a first

offense of a misdemeanor for which the punishment is a fine,

---

[12] In pertinent part, G. L. c. 119, § 58, provides:

"If a child is adjudicated a delinquent child on a
complaint, the court may place the case on file or may
place the child in the care of a probation officer for such
time and on such conditions as it deems appropriate or may
commit him to the custody of the department of youth
services, but the probationary or commitment period shall
not be for a period longer than until such child attains
the age of eighteen, or nineteen in the case of a child
whose case is disposed of after he has attained his
eighteenth birthday or age 20 in the case of a child whose
case is disposed of after he has attained his nineteenth
birthday."

imprisonment in a jail or house of correction for not more than 6 months or both such fine and imprisonment."  G. L. c. 119, § 52, as amended by St. 2018, c. 69, § 72.[13]  See generally Wallace W. v. Commonwealth, 482 Mass. 789, 792 (2019); Lazlo L. v. Commonwealth, 482 Mass. 325, 326-335 (2019); Commonwealth v. Cole C., 92 Mass. App. Ct. 653 (2018).  The court has continuing jurisdiction in certain circumstances beyond the date when a child turns eighteen.  As pertinent here, the Juvenile Court

> "shall continue to have jurisdiction over children who attain their eighteenth birthday pending final adjudication of their cases, including all remands and retrials following appeals from their cases, or during continuances or probation, or after their cases have been placed on file, or for any other proceeding arising out of their cases" (emphasis added).

G. L. c. 119, § 72 (a).  In essence, the juvenile argues that, because his case was "finally adjudicated" when he admitted to sufficient facts and was adjudged delinquent on the underlying complaint, the continuing jurisdiction provided by § 72 (a) does not extend to the subsequent probation violation proceeding.  It

---

[13] When the underlying delinquency complaint was brought in August 2015, the Juvenile Court's jurisdiction was limited by an earlier, broader definition of "delinquent child" as "a child between seven and 18 who violates any city ordinance or town by-law or who commits any offence against a law of the commonwealth."  See St. 2013, c. 84, § 7.  The new definition took effect on July 12, 2018.  See St. 2018, c. 69, § 232.  The juvenile fell within both definitions at all relevant times.

follows, he argues, that the Juvenile Court lost jurisdiction over him when he turned eighteen.

The juvenile's argument depends on his reading of the phrase "final adjudication of [his] case[]" to mean the moment when he was adjudged delinquent and sentenced.  But as is clear from the expansive enumerative language that immediately follows the phrase, which includes references to appeals, probation, and "any other proceeding arising out of the[] case[]," the juvenile's reading is incorrect.  Instead, "final adjudication" for purposes of § 72 (a) does not occur until all proceedings arising out of a case are concluded.  It does not, as the juvenile suggests, have the same meaning as "disposed of" as that phrase is used in G. L. c. 119, § 58,[14] which refers in that context to the moment of initial sentencing.[15,16]

---

[14] The text of § 58 is reproduced in note 12, supra.

[15] Our conclusion in this regard is consistent with cases finding jurisdiction over adult probation violation proceedings even after the expiration of the probationer's term of probation provided the violation occurred during the probationary term. See Commonwealth v. Aquino, 445 Mass. 446, 449 (2005); Commonwealth v. Sawicki, 369 Mass. 377, 379-380 (1975).

[16] Initial sentencing, as we use the phrase here, means the first sentence of commitment the juvenile receives.  This could be a commitment sentence on the underlying delinquency complaint or, where a juvenile received straight probation on the underlying offense, a commitment sentence imposed upon probation revocation.

What remains, then, is the question whether a probation violation proceeding "aris[es] out of" the underlying delinquency case, and we have no hesitation in concluding that it does.  A "probation revocation proceeding is not a new criminal prosecution."  Commonwealth v. Wilcox, 446 Mass. 61, 65 (2006).  Instead, it is a proceeding arising from a probationer's alleged violation of the terms of probation imposed as part of a sentence for an underlying conviction; in other words, it is spawned by the sentence from which it stems.  See Commonwealth v. Holmgren, 421 Mass. 224, 227 n.1 (1995) ("revocation of probation is not punishment for commission of any subsequent crime charged, but rather is a remedial sanction arising from the sentence imposed for the earlier offense").

Accordingly, because the juvenile's underlying delinquency case was pending final adjudication and the probation violation proceeding arose from it, the Juvenile Court retained jurisdiction over him even after he turned eighteen.

b.  Imposing suspended sentence upon revocation of probation.  Once the judge found the juvenile in violation of his probation, he had only four sentencing options:

> "After the court has entered a finding that a violation of probation has occurred, the court may order any of the following dispositions set forth below, as it deems appropriate.  These dispositional alternatives shall be the exclusive options available to the court.

. . .

"(i) Continuance of Probation.  The court may decline to modify or revoke probation and, instead, issue to the probationer such admonition or instruction as it may deem appropriate.

"(ii) Termination.  The court [may] terminate the probation order.

"(iii) Modification.  The court may modify the conditions of probation.  Such modification may include the addition of reasonable conditions and the extension of the duration of the probation order.

"(iv) Revocation.  The court may order that the order of probation be revoked.  If the court orders revocation, it shall state the reasons therefor in writing."

Juvenile Court Standing Order 1-17 § VIII(d).

Here, the judge decided that revocation was appropriate.  Once he made that determination, he was required to impose the original suspended sentence.  Holmgren, 421 Mass. at 228.  See, e.g., Commonwealth v. Eldred, 480 Mass. 90, 102 n.8 (2018) ("A suspended sentence, however, limits the judge's options should there be a violation of probation after a suspended sentence has been imposed, because, under . . . Holmgren, [supra], 'when probation is revoked, the original suspended sentence must be imposed'"); Commonwealth v. Cole, 468 Mass. 294, 304 (2014) ("Where the judge determines that the probation violation warrants the revocation of probation, the judge must impose the original suspended sentence").  "Upon revocation of a probation order, any sentence or commitment that was imposed for the

offense involved, the execution of which was suspended, shall be ordered . . . ." Juvenile Court Standing Order 1-17 § VIII(e).

Straightforward application of this rule here, however, leads to the undesirable result of imposing an illusory sentence. Because the juvenile's original suspended sentence terminated his DYS commitment when he turned eighteen, there was no practical purpose in imposing that sentence after the juvenile had already turned eighteen. Presumably recognizing this, the judge's solution was to extend the juvenile's DYS commitment to age nineteen. Although the judge could have imposed such a committed sentence upon finding a probation violation had the juvenile initially been sentenced to straight probation, he could not reach this result by imposing the suspended sentence.

It seems odd, indeed, that there should be no effective remedy for a juvenile whose probation violation is serious enough to warrant revocation of his probation simply because he violated probation shortly before turning eighteen -- especially since that juvenile received the benefit of a suspended sentence on the underlying delinquency complaint in the first place, and for the reasons we have set out above, the court had continuing jurisdiction over the juvenile even after he turned eighteen. But we have found no authority, nor has the Commonwealth cited any, for the proposition that the judge could do anything other

than impose the original sentence. Indeed, to the contrary, we have been instructed that, upon probation revocation, the original suspended sentence <u>must</u> be imposed, regardless of whether that "is a desirable rule or not." <u>Holmgren</u>, 421 Mass. at 228. This is "[b]ecause the revocation of probation is not punishment for commission of any subsequent crime charged, but rather is a remedial sanction arising from the sentence imposed for the earlier offense . . . ." <u>Id</u>. at 227 n.1.

At oral argument, the Commonwealth suggested that the "spirit" of the underlying sentence was to commit the juvenile to DYS custody to the judge's maximum authority, i.e., age eighteen. Therefore, the Commonwealth reasons, when the judge imposed the suspended sentence to age nineteen (his maximum authority at that point), he was merely effectuating the same "spirit" of the original sentence, not really extending it. Although we recognize the broad equitable powers of the Juvenile Court, and the salutary purposes and reasons behind committing the juvenile to DYS custody because of the probation violation, we think it is a slippery slope indeed to look to the spirit of a sentence rather than its plain terms. This is not a case of merely interpreting the original sentencing judge's intent in the face of a less-than-explicit sentencing structure. See <u>Commonwealth</u> v. <u>Bruzzese</u>, 437 Mass. 606, 615 (2002). The

underlying sentence here stated that the juvenile was being committed to DYS until age eighteen.

This is not to say that the judge, despite finding the juvenile had violated his probation, was without power to do anything at all. He could have modified the terms of the juvenile's probation, including extending it and/or adding other terms. See G. L. c. 119, § 72 (a); Juvenile Court Standing Order 1-17 § VIII(d)(iii). And, as we stated above, had the juvenile originally been sentenced to straight probation, the judge could "impose a sentence, commitment, or other disposition as provided by law," Juvenile Court Standing Order 1-17 § VIII(f), including commitment to the juvenile's nineteenth birthday, G. L. c. 119, §§ 58 & 72. See Bruzzese, 437 Mass. at 617-618 ("If a defendant's straight probation is revoked, whether it be on a single charge or on multiple charges, he is subject to sentencing on those charges in essentially the same light that existed at the time straight probation was originally imposed"). But he could not extend the original suspended sentence to age nineteen, and the sentence must accordingly be vacated.

The problem presented here is a result of the Juvenile Court's common practice of crafting sentences to terminate at age eighteen, which seems to act as a convenient shorthand to indicate that the judge wishes to impose a sentence concurrent

with the full extent of the court's initial jurisdiction over a juvenile and the judge's initial sentencing authority.  The Juvenile Court may wish to study and consider whether there are other ways to write sentences that will not result in the problem we encounter here.

Conclusion.  For the reasons set out above, so much of the order as finds a probation violation and revokes the juvenile's probation is affirmed; so much of the order as extends the juvenile's commitment to DYS custody to age nineteen is vacated, and the juvenile's original sentence shall be imposed nunc pro tunc.[17]

So ordered.

---

[17] We realize that, given the juvenile's age, the corrected sentence will have no practical effect.