LYDON vs. CONTRIBUTORY RETIREMENT APPEAL BOARD, 101 Mass. App. Ct. 365

 
 JAMES LYDON vs. CONTRIBUTORY RETIREMENT APPEAL BOARD & another. [Note 1]

101 Mass. App. Ct. 365
 April 13, 2022 - July 8, 2022

Court Below: Superior Court, Suffolk County
Present: Meade, Englander, & Grant, JJ.

 

No. 21-P-737.

Contributory Retirement Appeal Board. Public Employment, Retirement. Retirement. Statute, Construction.

Discussion of the standard of review of a decision of the Contributory Retirement Appeal Board (board), which is de novo with regard to questions of law, but with deference to the board's expertise and according great weight to the board's interpretation and application of the statutory provisions it administers. [366-367]

In a civil action challenging the denial by the Contributory Retirement Appeal Board (board) of the request by the plaintiff, who had retired from a municipal housing authority, to obtain credit towards his G. L. c. 32 retirement allowance for his prior service with the MassDevelopment Finance Agency (MassDevelopment), the Superior Court judge properly upheld the board's interpretation of G. L. c. 32, § 3 (5), that a member of a retirement system who sought to purchase pre-membership service from a different governmental unit, which did not have a contributory retirement system at the time of that service, was required to demonstrate that the previous governmental unit had since established a G. L. c. 32 retirement system; accordingly, given that MassDevelopment had neither adopted, nor been authorized to implement, a G. L. c. 32 contributory retirement system, the plaintiff was not entitled to purchase credit for his service with MassDevelopment under G. L. c. 32, § 3 (5). [367-372]

Civil action commenced in the Superior Court Department on January 23, 2020.

 The case was heard by Christine M. Roach, J., on motions for judgment on the pleadings.

 Gerald A. McDonough for the plaintiff.

 Douglas S. Martland, Assistant Attorney General, for Contributory Retirement Appeal Board.

 Michael Sacco for retirement board of Quincy.

 MEADE, J. This appeal presents the question whether the Contributory Retirement Appeal Board (CRAB) properly interpreted 

 Page 366 

G. L. c. 32, § 3 (5), in denying the plaintiff's request to obtain credit towards his G. L. c. 32 retirement allowance for his prior service with the MassDevelopment Finance Agency (MassDevelopment). A Superior Court judge upheld CRAB's interpretation of the statutory language of G. L. c. 32, § 3 (5), that a member of a retirement system who seeks to purchase pre-membership service from a different governmental unit, which did not have a contributory retirement system at the time of that service, must demonstrate that the previous governmental unit has since established a G. L. c. 32 retirement system. The plaintiff, James Lydon, challenges that interpretation as being erroneous as matter of law. We affirm. 

 1. Background. In May of 2017, Lydon retired from the Quincy Housing Authority, where he worked for approximately four years. Prior to his employment with the Quincy Housing Authority, Lydon was an employee of MassDevelopment from April 17, 2007, through May 13, 2013. On May 11, 2017, prior to his retirement, Lydon applied to the retirement board of Quincy (board) to purchase his prior service with MassDevelopment as creditable service. Although the board conducted a hearing in June 2017 and issued a decision denying without explanation Lydon's request in September 2017, Lydon did not receive the decision until April 2018. In August 2017, he filed an appeal of the board's inaction with CRAB, and later, when he received the board's decision, he filed a second appeal from the September 2017 decision. CRAB assigned the matter to the Division of Administrative Law Appeals (DALA) for a hearing or other process. DALA consolidated the two appeals and ultimately concluded that the second appeal was timely. As to the merits, DALA concluded that because MassDevelopment has neither adopted, nor been authorized to implement, a G. L. c. 32 contributory retirement system, Lydon is not entitled to purchase credit for his service with MassDevelopment under G. L. c. 32, § 3 (5). 

CRAB adopted DALA's findings and conclusions of law. Thereafter, Lydon filed a complaint in Superior Court pursuant to G. L. c. 30A, § 14, seeking review of CRAB's decision, arguing that CRAB's longstanding interpretation of G. L. c. 32, § 3 (5), was erroneous as matter of law. Judgment on the pleadings, however, was awarded in favor of both CRAB and the board, from which Lydon timely appealed.

 2. Standard of review. "It is well established that judicial review of a CRAB decision pursuant to G. L. c. 30A, § 14, is 

 Page 367 

narrow." Murphy v. Contributory Retirement Appeal Bd., 463 Mass. 333, 344 (2012). "While we review questions of law de novo, we nonetheless 'typically defer[] to CRAB's expertise and accord[] great weight to its interpretation and application of the statutory provisions it administers'" (citation omitted). Young v. Contributory Retirement Appeal Bd., 486 Mass. 1, 5 (2020). "We will reverse or amend CRAB's decision only if it is arbitrary or capricious, based upon an error of law or unlawful procedure, unwarranted by the facts found by the agency or the Superior Court, or unsupported by substantial evidence." Id. See G. L. c. 30A, § 14 (7). See also Parente v. State Bd. of Retirement, 80 Mass. App. Ct. 747, 749-750 (2011).

 3. Discussion. "Our primary duty in interpreting a statute is to effectuate the intent of the Legislature in enacting it" (quotation and citation omitted). Spencer v. Civil Serv. Comm'n, 479 Mass. 210, 216 (2018). In doing so, "[t]he starting point of our analysis is the language of the statute, the principal source of insight into Legislative purpose" (citation and quotation omitted). City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 788 (2019). In pertinent part, G. L. c. 32, § 3 (5), states: 

"Any member of any system who had rendered service as an employee of any governmental unit other than that by which he is presently employed, for any previous period during which the first governmental unit had no contributory retirement system or during which he had inchoate rights to a non-contributory pension or in a position which was not subject to an existing retirement system, or which was specifically excluded therefrom but which would be covered under the law now in effect . . . may, before the date any retirement allowance becomes effective for him, pay into the annuity savings fund of the system in one sum, or in instalments, upon such terms as the board may prescribe, an amount equal to that which would have been withheld as regular deductions from his regular compensation for such previous period, or most recent portion thereof, as he may elect, in no event aggregating more than twenty years, had such service been rendered in the governmental unit by which he is presently employed and in a position subject to the provisions of this chapter, or to corresponding provisions of earlier laws" (emphases added).

 Thus, the statute allowed Lydon to purchase credit towards his c. 32 retirement allowance for (1) service "for any previous 

 Page 368 

period during which the first governmental unit had no contributory retirement system," (2) service "during which he had inchoate rights to a non-contributory pension," (3) service "in a position which was not subject to an existing retirement system," or (4) service "which was specifically excluded from [G. L. c. 32]." 

 When interpreting G. L. c. 32, § 3 (5), both CRAB and DALA have consistently interpreted the modifying phrase, "but which would be covered under the law now in effect," as modifying each of the four preceding conditions. See Reynolds vs. Holyoke Retirement Bd., CRAB Docket No. CR-03-656 (April 12, 2005). See also Wrobleski vs. State Bd. of Retirement, DALA Docket No. CR-09-338 (May 6, 2010). Pursuant to their interpretation, Lydon may purchase credit for service "for any previous period during which the first governmental unit had no contributory retirement system," only if the governmental unit has since established a G. L. c. 32 retirement system. See Wrobleski, supra. See also G. L. c. 32, § 3 (5). Lydon claims, however, that the plain language of the statute demonstrates that the modifying phrase, "but which would be covered under the law now in effect," modifies only the immediately preceding condition, i.e., service "which was specifically excluded" from G. L. c. 32. Where there exists ambiguity in the statutory language such that it lacks precision, we turn to the legislative history to effectuate the legislative intent, and give the statute a reasonable construction. See Matter of E.C., 479 Mass. 113, 118 (2018). 

 In 1945, the Commonwealth reformed its statutory retirement benefits scheme for public employees, and that reform sought to provide uniformity to all public retirement benefits. See G. L. c. 32, § 3 (5), inserted by St. 1945, c. 658, § 1. See also 1945 House Doc. No. 1950 at 5 (discussing desirability of single body of law that provides Commonwealth with uniformity in its retirement system to alleviate then-existing differences and inconsistencies among systems). During this reform, G. L. c. 32, § 3 (5), titled "Credit for Members for Intra-State Service in Governmental Units Where No System Existed," was enacted to permit members of a c. 32 retirement system to purchase credit for past service, if their past service met one of only two

 Page 369 

conditions of eligibility. [Note 2] See G. L. c. 32, § 3 (5), as inserted by St. 1945, c. 658, § 1. In 1946, the Legislature amended § 3 (5) to add two additional alternative eligibility criteria which would allow c. 32 retirement system members to purchase credit towards their retirement allowance for past government service. [Note 3] See G. L. c. 32, § 3 (5), as amended by St. 1946, c. 603, § 1. The following year, the Legislature further amended § 3 (5) by adding the modifying phrase at issue in this case, altering the first two conditions for eligibility to resemble the language of the statute as currently constructed, and separating the eligibility criteria for members who worked in a different government unit from the criteria for members who worked in the same government unit as that from which the members retired. See G. L. c. 32, § 3 (5), as amended by St. 1947, c. 667, § 4. In the 1947 amendment, the Legislature also eliminated each comma that previously had separated each of the first four eligibility criteria. See id. Eight years later, in 1955, though, the Legislature reinserted a comma between the third and fourth eligibility conditions. See G. L. c. 32, § 3 (5), as amended by St. 1955, c. 695, § 2. Thus, as of 1955, the statute provided as follows:

"Any member of any system who had rendered service as an employee of any governmental unit other than that by which he is presently employed, for any previous period during which the first governmental unit had no contributory retirement system or during which he had inchoate rights to a non-contributory pension or in a position which was not subject to an existing retirement system, or which was specifically excluded therefrom but which would be covered under the law now in effect, or any member who during any 

 Page 370 

period of service for the governmental unit by which he is presently employed had such inchoate rights or was so excluded from membership, or any employee who had a right to become a member of an existing system in any other governmental unit and who did not exercise such right, and who, when he left the service of such other governmental unit, had such right . . ." (emphasis added).

G. L. c. 32, § 3 (5), as amended by St. 1955, c. 695, § 2.

 According to Lydon, the Legislature purposely opted for the use of the disjunctive word "or" when listing the conditions found in § 3 (5), such that each of the four conditions are "mutually exclusive," and the modifying phrase modifies only the immediately preceding condition. Furthermore, where the Legislature inserted a comma in 1955 between the third and fourth eligibility conditions, Lydon claims that the modifying phrase makes "grammatical sense" only if interpreted to modify only the immediately preceding condition. See G. L. c. 32, § 3 (5), as amended through St. 1955, c. 695, § 2. We disagree. 

 Generally, "[t]he last antecedent rule provides . . . that a modifying clause is confined to the phrase that immediately precedes it and not to the phrases appearing earlier." New England Survey Sys., Inc. v. Department of Indus. Acc., 89 Mass. App. Ct. 631, 638 n.17 (2016). Contrary to Lydon's claim, "a comma separating the modifying clause from its antecedent(s) is some evidence that the modifier is meant to apply to all the antecedents, instead of only the immediate antecedent" (emphasis added; citations omitted). Id. Nevertheless, "matters of punctuation are not necessarily determinative and should not be allowed to defeat the true purpose and meaning of a statute." Globe Newspaper Co. v. Boston Retirement Bd., 388 Mass. 427, 432 (1983). See DiFiore v. American Airlines, Inc., 454 Mass. 486, 495-496 (2009) ("[W]e do not adopt a statutory interpretation derived from an analysis of punctuation that conflicts with principles of statutory construction"). See also Spencer, 479 Mass. at 216 ("time and again we have stated that we should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history" [citation omitted]); New England Survey Sys., Inc., 89 Mass. App. Ct. at 638 (statute's "dominant purpose" may require interpretation different from one derived from strict application of last antecedent rule to statutory language). 

 Page 371 

 As the judge properly determined, where the purpose of the sweeping reform of retirement benefits in 1945 was clarity and uniformity, the Legislature's goal in enacting § 3 (5), like its goal in enacting G. L. c. 32 as a whole in 1945, was to put government employees on equal footing in the calculation of their retirement allowance. See 1945 House Doc. 1950 at 6 (General Laws c. 32 "sets up uniform provisions for the members of all contributory retirement systems . . . , clarifies inconsistent and conflicting provisions, and eliminates unnecessary and redundant sections of the present law" [emphasis added]). Under CRAB's consistent interpretation of § 3 (5), one who previously worked at a governmental unit that adopted a G. L. c. 32 retirement system only after the employee left would receive equal creditable service as the employees who reap the benefits of the governmental unit's subsequent establishment of a G. L. c. 32 retirement system. This interpretation achieves uniformity among employees of the same governmental unit, consistent with the Legislature's underlying intent when enacting G. L. c. 32 in 1945. See 1945 House Doc. 1950 at 6. 

 At bottom, CRAB's interpretation of § 3 (5) to permit members to purchase credit for past service, only if the governmental unit that they worked for later adopted a G. L. c. 32 retirement system, is reasonable. "Where [CRAB's] construction of a statute is reasonable, [we do] not supplant it with [our] own interpretation." State Bd. of Retirement v. Contributory Retirement Appeal Bd., 77 Mass. App. Ct. 452, 455 (2010). See Gorman v. Contributory Retirement Appeal Bd., 67 Mass. App. Ct. 123, 128 (2006) (affirming where CRAB's interpretation of statute is reasonable and consistent with underlying purpose of statute). "[W]e are mindful that 'retirement law is notoriously complex'" (citation omitted). Murphy, 463 Mass. at 345. Moreover, "[p]ursuant to G. L. c. 30A, § 14, . . . we are required to give "due weight to the experience, technical competence, and specialized knowledge of the agency [CRAB], as well as to the discretionary authority conferred upon it." See Parente, 80 Mass. App. Ct. at 749-750. Accordingly, we defer to CRAB's expertise in this area. [Note 4] See Mendes's Case, 486 Mass. 139, 143 (2020) ("The interpretation 

 Page 372 

of a statute by the agency charged with primary responsibility for administering it is entitled to substantial deference" [quotation and citation omitted]). 

 Moreover, since CRAB first interpreted G. L. c. 32, § 3 (5), in 2005 in Reynolds vs. Holyoke Retirement Bd., CRAB Docket No. CR-03-656 (April 12, 2005), the Legislature has amended G. L. c. 32, § 3, eleven times, but has refrained from amending the particular language of § 3 (5). See G. L. c. 32, § 3, as amended by St. 2021, c. 39 § 37; St. 2018, c. 221; St. 2017, c. 161, § 2; St. 2017, c. 47, § 24; St. 2017, c. 6, § 53; St. 2015, c. 86, § 3; St. 2014, c. 313, § 2; St. 2012, c. 139, § 62; St. 2011, c. 176, §§ 8, 9; St. 2008, c. 467; St. 2008, c. 308, § 2. In light of these eleven amendments, we presume that the Legislature is aware of CRAB's long-standing interpretation of § 3 (5), and "[t]he absence of any legislative objection" concerning the language of § 3 (5) "is telling." Pavian, Inc. v. Hickey, 452 Mass. 490, 494-495 (2008). See Alves's Case, 451 Mass. 171, 180 (2008). Any change in the interpretation of G. L. c. 32, § 3 (5), is ultimately for the Legislature to effectuate. [Note 5] See Rosing v. Teachers' Retirement Sys., 458 Mass. 283, 294 (2010). 

 The judgment of the Superior Court affirming the decision of CRAB is affirmed.

 So ordered.

FOOTNOTES
[Note 1] Retirement board of Quincy. 

[Note 2] In 1945, G. L. c. 32, § 3 (5), stated in pertinent part: 

"Any member of any system who had rendered service as an employee of any governmental unit other than that by which he is presently employed, for any previous period during which the first governmental unit had no contributory retirement system or during which he had inchoate rights to a non-contributory pension under the provisions of earlier laws or of any other general or special law . . . ." G. L. c. 32, § 3 (5), inserted by St. 1945, c. 658, § 1.

[Note 3] In 1946, the Legislature added the following emphasized language to G. L. c. 32, § 3 (5): "Any member of any system who had rendered service as an employee of any governmental unit other than that by which he is presently employed, for any previous period during which the first governmental unit had no contributory retirement system, or in the same governmental unit in a position which was not subject to the retirement system of which he is now a member, or during which he had inchoate rights to a non-contributory pension, or during which he was specifically excluded from membership, under the provisions of this chapter, under the provisions of earlier laws or of any other general or special law . . . (emphasis added)." G. L. c. 32, § 3 (5), as amended by St. 1946, c. 603, § 1. 

[Note 4] This is particularly true where CRAB's interpretation of § 3 (5) aligns with the Legislature's ultimate goal in enacting G. L. c. 32 in 1945. See 1945 House Doc. 1950 at 7. See also Spencer, 479 Mass. at 216 ("Our primary duty in interpreting a statute is to effectuate the intent of the Legislature in enacting it" [citation and quotations omitted]). 

[Note 5] CRAB asserts that its interpretation of G. L. c. 32, § 3 (5) protects the fiscal integrity of the retirement system. Lydon disagrees, and believes that CRAB has failed to demonstrate, with sufficient specificity, the negative fiscal impacts from a change in the interpretation of G. L. c. 32, § 3 (5). See Worcester Regional Retirement Bd. v. Public Employee Retirement Admin. Comm'n, 489 Mass. 94, 105 & n.14 (2022). However, where CRAB's interpretation of the statute is reasonable, such an issue of policymaking is ultimately for the Legislature to address. See id. See also Cooney v. Compass Group Foodservice, 69 Mass. App. Ct. 632, 639 (2007) ("We cannot substitute our judgment for that of . . . the Legislature" [citation omitted]). 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.