NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-167

ELLEN MOYNIHAN

vs.

CONTRIBUTORY RETIREMENT APPEAL BOARD & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Ellen Moynihan, has worked as a public school teacher and administrator since 1988.  She began her career in Norfolk, Virginia, where she taught elementary school for four years before moving away from the area.  She then taught in Stamford, Connecticut for three years and in Sutton, Massachusetts for six years before accepting a position in Worcester, where she continued to work until the time of this appeal.  In 2016, pursuant to G. L. c. 32, § 3 (4), she applied to the Massachusetts Teachers' Retirement System (MTRS) to "purchase" credit for her years of service outside of Worcester.[2]

_____

[1] Massachusetts Teachers' Retirement System.

[2] General Laws c. 32, § 3 (4), permits public school employees to contribute a sum of money to their pension fund to represent payments they would have made during years they spent teaching elsewhere.  This act is referred to as "purchasing"

The plaintiff was permitted to purchase credit for her Stamford and Sutton years of service, but MTRS denied her request with respect to her time in Norfolk, reasoning that she was prohibited by statute and regulation from purchasing service for which she had already received a retirement allowance.

The plaintiff appealed that denial to the Division of Administrative Law Appeals (DALA), which affirmed it. She then appealed DALA's decision to the Contributory Retirement Appeal Board (CRAB), which also affirmed the MTRS ruling. Having exhausted her administrative remedies, the plaintiff sought review in the Superior Court, where a judge denied her motion for judgment on the pleadings and instead granted judgment to the defendants on much of the same reasoning as had been offered by MTRS and DALA. Discerning no error, we likewise affirm.

Discussion. "It is well established that judicial review of a CRAB decision pursuant to G. L. c. 30A, § 14, is narrow." Lydon v. Contributory Retirement Appeal Bd., 101 Mass. App. Ct. 365, 366-367 (2022), quoting Murphy v. Contributory Retirement Appeal Bd., 463 Mass. 333, 344 (2012). While we review questions of law de novo, we nonetheless typically defer to CRAB's expertise and accord great weight to its interpretation

those years of service. Doing so permits teachers to increase the size of payments they receive from MTRS in retirement. See Massachusetts Teachers' Retirement Sys. v. Contributory Retirement Appeal Bd., 466 Mass. 292, 294-295 (2013).

2

and application of the statutory provisions it administers.  Id. at 367.  "We will reverse or amend CRAB's decision only if it is arbitrary or capricious, based upon an error of law or unlawful procedure, unwarranted by the facts found by the agency . . . or unsupported by substantial evidence" (citation omitted).  Id.

"In certain situations, a member of a retirement system may purchase additional creditable service, or credit, for work or other service performed before becoming a member of a retirement system."  Massachusetts Teachers' Retirement Sys. v. Contributory Retirement Appeal Bd., 466 Mass. 292, 294 (2013).  Importantly, however, "no credit shall be allowed . . . for any service for which the member shall be entitled to receive a retirement allowance from any other state."  G. L. c. 32, § 3 (4).

This case turns on the meaning of the phrase "retirement allowance."  The plaintiff's chief argument is that this phrase is "commonly understood" to refer to "the retirement benefit that a member obtains at retirement," but the principal case on which she relies to support this proposition plainly refers to retirement allowances provided by the Massachusetts retirement system.[3]  See Young v. Contributory Retirement Appeal Bd., 486

_____

[3] At times, the plaintiff alludes to the definition offered in G. L. c. 32, § 1, as supporting her cause.  Section 1 defines retirement allowance as "the sum of the amount of the annuity and the amount of the pension provided for in sections one to

3

Mass. 1, 3 (2020) (describing "retirement allowance" in context of G. L. c. 32). As such, we decline to adopt this narrow reading of the statute, as "[t]he language of the statute is not to be enlarged or limited by construction unless its object and plain meaning require it." Dube v. Contributory Retirement Appeal Bd., 50 Mass. App. Ct. 21, 23-24 (2000), quoting Gateley's Case, 415 Mass. 397, 399 (1993). Instead, MTRS, under authority granted to it by G. L. c. 32, § 20 (5) (b), has promulgated 807 Code Mass. Regs. § 19.04 (2010), which states:

> "(1) [G. L. c. 32, § 3 (4),] provides that no credit shall be allowed and no payment shall be accepted for any service for which the member shall be entitled to receive a retirement allowance from any other state.

> "(2) For purposes of 807 CMR 19.04(1), the term 'retirement allowance' means any out of state governmental defined benefit plan, or defined contribution plan offered in lieu of a defined benefit plan or as the sole retirement plan but not as a supplemental plan, in which a member is eligible to receive, or has received, a benefit based in whole or in part upon employer contributions."

The parties do not dispute that the Norfolk, Virginia school system made payments into the Virginia retirement fund on the plaintiff's behalf, and that she received a payout in the amount of $4,156.20 from that system when she ended her

_____

twenty-eight inclusive." G. L. c. 32, § 1. The internal reference to §§ 1 to 28 reflects, however, that the definition offered in § 1 refers only to retirement benefits provided under the statute -- that is, for work performed specifically in Massachusetts. The plaintiff eventually concedes this point in her brief before this court.

4

employment there and departed the area in 1992. CRAB concluded that Norfolk's contributions to the plaintiff's retirement fund constituted employer contributions, and the payment of those funds to her amounted to a retirement allowance. We defer to CRAB's interpretation of its regulation. See Lydon, 101 Mass. App. Ct. at 367. Accordingly, we conclude that the plaintiff was properly precluded from purchasing her Norfolk years of service by MTRS and discern no error on the part of the Superior Court judge in denying the plaintiff's motion on that basis.

The plaintiff raises several additional arguments in urging us to reverse CRAB's ruling, which we address in turn. First, she contends that the proper time for determining whether she qualified for retirement benefits from another agency was the time at which she applied to MTRS to purchase credit for her Norfolk years of service, and that, at that time, she did not qualify for a retirement allowance from Virginia. We are unpersuaded by this argument, however. The case on which the plaintiff relies for this principle, Dube, 50 Mass. App. Ct. at 24-25, distinguished a set of facts in which a party could not be prohibited from purchasing years of service based on the nebulous possibility that they might become qualified to receive a retirement allowance in the future. Where, as here, the plaintiff has actually received the retirement allowance from another system, we do not read Dube to preclude MTRS's

5

interpretation of the definition of retirement allowance in 807 Code Mass. Regs. § 19.04(2).

Second, the plaintiff argues that the denial of her request to purchase credit for her Norfolk years of service, as compared to CRAB's acceptance of her Stamford and Sutton years, constitutes a "distinction without a difference" that defeats the purpose of G. L. c. 32, § 3 (4). We are not persuaded. While we are not without sympathy to the obvious similarity between the various retirement schemes, the plaintiff conceded that "those funds [received from Virginia] supplemented [her] income" as part of her argument that the funds did not constitute a retirement allowance. The plaintiff's ability to dispose of that cash sum however she saw fit in the intervening years since her departure from Virginia constitutes a material difference between her retirement allowance in Virginia and the funds from Stamford and Sutton that she rolled into the MTRS fund.

Third, the plaintiff argues that the administrative magistrate and CRAB erred in ruling as a matter of law and denying her an evidentiary hearing to explore "the nature of the Virginia retirement plan, the contributions made for [the plaintiff] and her entitlement to a retirement allowance." This argument, however, conflates legal and factual disagreements between the parties. The underlying facts of this case are not

6

in dispute and, accordingly, we discern no error in concluding that an evidentiary hearing was not warranted.

Finally, the plaintiff argues that the defendants should be estopped from disallowing the purchase of credit for her years of service in Norfolk because they relied on those years in calculating her payments to MTRS. This argument suffers from several fatal defects,[4] but, regardless, "[t]he courts cannot estop the conduct of a governmental officer or agency, as they might a private actor, because the public interest in the lawful work of the governmental actor overrides the unfairness or injury to the private complainant." Ridgeley Mgt. Corp. v.

---

[4] In order to establish a claim of equitable estoppel, the plaintiff is required to show:

> "(1) a representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made; (2) an act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made; and (3) detriment to the reliant person as a consequence of the act or omission." (Quotations, citation, emphasis, and internal punctuation omitted.)

Renovator's Supply, Inc. v. Sovereign Bank, 72 Mass. App. Ct. 419, 426-427 (2008). We agree with the Superior Court judge and would be hard pressed to conclude that the plaintiff has suffered a detriment where she was required to make higher payments to the MTRS only because her salary was increased based on her years of service in Norfolk. Even if all three parts of the prima facie case were satisfied, the allegedly wrongful conduct in question -- miscalculation of the plaintiff's salary -- was performed by the Worcester school system, which is not a party to this case.

7

Planning Bd. of Gosnold, 82 Mass. App. Ct. 793, 801 (2012).  On these facts, we discern no reason to deviate from this general rule.

Judgment affirmed.

By the Court (Rubin, Massing & Desmond, JJ.[5]),

Assistant Clerk

Entered:  May 28, 2024.

---

[5] The panelists are listed in order of seniority.